STATE of Maine

v.

**Dennis C. NILE.**

Supreme Judicial Court of Maine.

Argued March 21, 1989.

Decided April 21, 1989.

Janet Mills (orally), Dist. Atty., Farmington, for the State.

Steven C. Peterson (orally), Camden, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

The defendant, Dennis C. Nile, appeals from his convictions of kidnapping with a dangerous weapon (Count I), 17–A M.R.S.A. §§ 301(1)(A)(3), 1252(4) (1983); criminal threatening with a firearm (Count II), 17–A M.R.S.A. §§ 209, 1252(4) (1983); gross sex-ual misconduct (Count III), 17–A M.R.S.A. § 253(1)(A) (Supp.1988); and possession of a firearm by a felon (Count IV), 15 M.R.S.A. § 393 (1980), after a jury trial in the Superior Court (Kennebec County; Brody, C.J.).[1] We affirm the judgments.

Based on the evidence presented at trial, the jury would have been warranted in finding that in October 1987, the defendant's wife, Lynn Nile, because of past physical abuse by Nile, filed for divorce and moved out of their marital home in Farmington with their two-year-old son. Nile had previously threatened to kill her if she left him, and Mrs. Nile feared for her life.

The day after Mrs. Nile moved out of the marital home, Nile appeared at the Big Apple Store in Farmington where his wife was employed as manager. Nile forced her to leave with him at knifepoint, threatening to kill her and everybody in the store if she refused. Nile forced his wife into his truck and continued to threaten her as the truck, operated by Robert Smart, a friend of Nile's and a co-defendant in the trial,[2] was driven to the Nile home. Nile forced his wife out of the truck and into the house, and forced her to call the babysitter and say that Smart would pick up the couple's baby. From several of his guns located in the home, Nile took and loaded a rifle and forced his wife to call the Big Apple and tell a co-worker that she, Mrs. Nile, would be killed if the police were called. Nile then forced her to walk with him into a wooded area where they remained for several hours and where he repeatedly threatened her with the rifle and a knife, and forced her to perform oral sex, and on one occasion, to engage in sexual intercourse.

Nile released his wife after she promised, under threat with a knife, to move back in with him and not to tell the police about the kidnapping.

I.

Nile first contends that the State failed to prove that he used or possessed a

---

1. Nile was indicted in Franklin County. Venue was changed to Kennebec County on Nile's motion. See 15 M.R.S.A. § 1 (Supp.1988). See also M.R.Crim.P. 21.

2. Smart was indicted as a co-defendant on the charge of kidnapping with a dangerous weapon. He was convicted and did not appeal.

"firearm" within the meaning of the charges in Count II, criminal threatening with a firearm, 17–A M.R.S.A. §§ 209,[3] 1252(4)[4] and Count IV, possession of a firearm by a felon, 15 M.R.S.A. § 393.[5]

The rifle used by Nile was not introduced into evidence and Nile argues that the State failed to demonstrate that the rifle was "operable" within the meaning of *State v. Smith*, 379 A.2d 722, 726 (Me. 1977). Prior to 1983, "firearm" was defined as a weapon "which *will* expel a projectile by the action of an explosive." 17–A M.R.S.A. § 2(12–A) (1983) (emphasis added). In *Smith* we held that the State was required to prove that the gun was operable in its proof of a crime defined as involving a firearm. 379 A.2d at 726–27. *See also State v. Morris*, 440 A.2d 1035 (Me.1982). In 1983, however, section 2(12–A) was amended and the requirement of operability was deleted.[6] That section now reads in pertinent part:

'Firearm' means any weapon, whether loaded or unloaded, which *is designed to* expel a projectile by the action of an explosive and includes any such weapon commonly referred to as a pistol, revolv-

er, rifle, gun, machine gun or shotgun. . . .

17–A M.R.S.A. § 2(12–A) (Supp.1988) (emphasis added). That this was one of several guns owned by Nile, that he loaded it with ammunition, pointed it at Mrs. Nile and threatened her with it, is sufficient evidence to allow the jury, correctly instructed by the court as to the definition of a firearm, to find that the rifle possessed and used by Nile to threaten his wife was a firearm. *See State v. Millett*, 392 A.2d 521, 527–28 (Me.1978) (finding that defendant committed crime with firearm not dependant upon production of weapon as evidence at trial).

## II.

Nile next argues that his sentence on Count I of fifteen years was unlawful. Count I of the indictment alleged that Nile kidnapped Mrs. Nile with a dangerous weapon.[7] Kidnapping is a violation of 17–A M.R.S.A. § 301 (1983). Subsection 3 provides:

Kidnapping is a Class A crime. It is however, a defense which reduces the crime to a Class B crime, if the defendant voluntarily released the victim alive

. . . .

. . . For the purposes of this section, the term 'dangerous weapon' shall have the same meaning as in Title 17–A, section 2, subsection 9 and the term 'firearm' shall have the same meaning as in Title 17–A, section 2, subsection 12–A.

Nile stipulated that he had been convicted of a felony.

---

3. 17–A M.R.S.A. § 209 (1983) provides, in pertinent part:
   1. A person is guilty of criminal threatening if he intentionally or knowingly places another person in fear of imminent bodily injury.

4. 17–A M.R.S.A. § 1252(4) (1983) provides, in pertinent part:
   4. If the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon then the sentencing class for such crime is one class higher than it would otherwise be. . . .
   The State charged that the dangerous weapon was a firearm.

5. 15 M.R.S.A. § 393 (1980) provides, in pertinent part:
   1. Possession prohibited. No person who has been convicted of any crime, under the laws of the United States, the State of Maine or any other state, which is punishable by one year or more imprisonment or any other crime which was committed with the use of a dangerous weapon or of a firearm against a person . . . shall own, have in his possession or under his control any firearm, unless such a person has obtained a permit under this section. . . .

6. 17–A M.R.S.A. § 2(12–A) (1983) was amended by P.L.1983, ch. 219. The statement of fact submitted with the legislation stated that its purpose was "to remove the operability requirement." L.D. 973, Statement of Fact (111th Legis.1983).

7. Count I charged Nile with a violation of 17–A M.R.S.A. § 301(1)(A)(3) (1983), which provides as follows:
   1. A person is guilty of kidnapping if either:
   A. He knowingly restrains another person with the intent to
   . . . .
   (3) inflict bodily injury upon him or subject him to such conduct defined as criminal in chapter 11. . . .
   Chapter 11 of 17–A M.R.S.A. §§ 251–255 (1983 & Supp.1988) sets out the various sex offenses.

and not suffering from serious bodily injury, in a safe place prior to trial.

The evidence presented at trial established, and the court specifically found, that Nile voluntarily released Mrs. Nile alive and not suffering from any serious bodily injury in a safe place prior to trial. 17–A M.R.S.A. § 301(3) thus served to reduce the kidnapping, as a threshold matter, from a Class A offense to a Class B offense,[8] with a maximum sentence of no more than ten years in prison. The court, however, applied the sentence enhancement provisions of 17–A M.R.S.A. § 1252(4) and imposed fifteen years in prison, a sentence within the twenty-year allowable maximum for a Class A crime.

Here, the State did plead and prove at trial that Nile had used a dangerous weapon to kidnap Mrs. Nile. Nile argues that to allow the court to apply the enhancing provisions of section 1252(4) to increase to Class A a kidnapping already reduced to Class B under section 301(3), would contravene the policy behind section 301(3) of providing an incentive to kidnappers to release their victims unharmed[9] and render section 301(3) a nullity. We disagree.

17–A M.R.S.A. § 1252(4) provides in pertinent part:

If the State pleads and proves that a Class B, C, D or E crime was committed with the use of a dangerous weapon then the sentencing class for such crime is one class higher than it would otherwise be.... This subsection shall not apply to a violation or an attempted violation of section 208 or to any offense for which the sentencing class is otherwise increased because the actor or an accomplice to his knowledge is armed with a firearm or other dangerous weapon.

Although the policy behind section 301(3) is to encourage kidnappers to release their victims unharmed, section 1252(4) manifests an equally strong public policy of discouraging the use of weapons by law breakers. There is nothing in the plain language of either section 301(3) or 1252(4) to indicate that a kidnapping designated as a Class B offense under section 301(3) should not be enhanced under section 1252(4). Indeed, section 1252(4) by its own terms excludes from its application only section 208 (aggravated assault) and any offense otherwise enhanced by its own definition because of the use of a firearm or other dangerous weapon. After the application of section 301(3), Nile was found guilty of a Class B crime enhanced by the allegation and proof that he committed it with the use of a dangerous weapon. We conclude the court properly applied section 1252(4) to enhance the kidnapping, pleaded and proved by the State to have been committed with a dangerous weapon, to a Class A offense for purposes of sentencing.

## III.

■ Nile also contends that it was an abuse of the court's discretion to permit Mrs. Nile and another witness to testify about a prior, uncharged incident occurring about one month prior to the crimes charged here, during which Nile beat and injured Mrs. Nile. We disagree. Evidence of the incident is clearly relevant to the state of mind of Mrs. Nile, a crucial issue in three of the charges at trial. *State v. Lindsey*, 447 A.2d 794, 796 (Me.1982). On the charge of kidnapping, Nile contends that Mrs. Nile left the Big Apple with Nile and remained with him voluntarily during the next several hours, and that there was no restraint within the meaning of 17–A M.R.S.A. § 301. The State had to prove that Mrs. Nile was placed in fear of imminent bodily injury in order to prove criminal threatening under 17–A M.R.S.A. § 209, and, under 17–A M.R.S.A. § 253(1)(A), the State had to show that Mrs. Nile submitted to a sexual act as the result of compulsion.[10] We find no clear

---

8. A Class A crime is punishable by a definite period of imprisonment not exceeding 20 years. 17–A M.R.S.A. § 1252(2)(A) (1983). A Class B crime is punishable by a definite period of imprisonment not exceeding 10 years. 17–A M.R.S.A. § 1252(2)(B) (1983).

9. *See* 17–A M.R.S.A. § 301 comment (1983).

10. "Compulsion" is defined as:
    physical force, a threat of physical force or a combination thereof which makes a person unable to physically repel the actor or which produces in that person a reasonable fear that

error in the court's determination that evidence of the prior beating was relevant to the victim's state of mind, *Lindsey*, 447 A.2d at 796; M.R.Evid. 401, and no abuse of discretion in the court's conclusion that the relevance was not outweighed by unfair prejudice. 447 A.2d at 796.

### IV.

Finally, Nile contends that the evidence is insufficient to support his convictions of the offenses of kidnapping with the use of a dangerous weapon and gross sexual misconduct. Viewing the evidence in the light most favorable to the State, the jury rationally could have found beyond a reasonable doubt all of the elements of those charges. *State v. Barry*, 495 A.2d 825, 826 (Me. 1985).

The entry is: Judgments affirmed.

All concurring.

death, serious bodily injury or kidnapping might be imminently inflicted upon that person or upon another human being.