2004 ME 2

**Patrick TINSMAN et al.**

v.

**TOWN OF FALMOUTH.**

Supreme Judicial Court of Maine.

Argued: Oct. 14, 2003.

Decided: Jan. 6, 2004.

William S. Kany (orally), Aaron P. Burns, Smith Elliott Smith & Garmey, P.A., Saco, for plaintiffs.

William L. Plouffe (orally), Drummond Woodsum & MacMahon, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Patrick Tinsman appeals from the judgment entered in the Superior Court (Cumberland County, *Warren, J.*) affirming the decision of the Town of Falmouth Planning Board to deny approval of a private way for two parcels of land located near Longwoods Road in Falmouth. Tinsman contends that (A) the Board erred as a matter of law in finding that Tinsman made transfers with the intent to avoid the objectives of the subdivision statute and with the result that the transfers created an unapproved subdivision; (B) the Board erred as a matter of law in determining that it could not approve a private way application for lots that are part of an unapproved subdivision; and (C) the Board abused its discretion by relying on the testimony of the Falmouth Town Planner. We affirm the judgment of the Superior Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2] The lots at issue in this appeal come from separate parcels of land originally belonging to Donna Light and to Andrew Card. On February 22, 1999, Light divided her land in four separate conveyances. Three of the conveyances, those to Valente, an abutting landowner, Brown, and Liberty, were for consideration. The fourth conveyance, to Buchanan, was a gift to a relative. On August 16, 1999, Liberty conveyed 3.7 acres of his lot

to Brown, an abutter, and the remaining 11.21 acres of his lot to Tinsman. On that same date, Card conveyed 3.9 acres of his land to Namsnit, Inc., a corporation wholly owned and controlled by Tinsman.[1]

[¶3] On September 20, 1999,[2] several land transactions occurred between Tinsman and Namsnit, all without consideration. Namsnit conveyed approximately a half-acre to Tinsman. Tinsman conveyed 2.94 acres to Namsnit. In addition, Tinsman conveyed 518 square feet, including 26.39 feet of road frontage, to Namsnit. At the time of the conveyances between Tinsman and Namsnit, the two landowners were abutters.

[¶4] On September 24, 1999, Tinsman conveyed about two acres, what came to be known as Lot 54–7, to his parents, Douglas and Sandra Tinsman,[3] as a gift, and about 2.88 acres, what came to be known as Lot 54–6, to his wife, Jennifer Tinsman, as a gift. These conveyances were apparently a mistake, and to correct the mistake, on November 29, 2001, Jennifer and Sandra exchanged lots, with Jennifer conveying Lot 54–6 to Sandra, and Sandra conveying Lot 54–7 to Jennifer.

[¶5] On March 16, 2000, Tinsman conveyed about 3.35 acres to Namsnit, without consideration. This conveyance consisted of the remainder of the parcel Tinsman acquired from Liberty on August 16, 1999. As part of his business of real estate development, Tinsman entered into a joint venture with Cloutier Construction to build a home on the 3.35 acres of Namsnit's land and, subsequently the house was sold to the Davises for $325,000. On April 5, 2000, Namsnit conveyed 2.9 acres of what was once the Card parcel to Tinsman, and,

on that same day, Tinsman conveyed the same parcel to Cloutier Construction. In addition, on that same date, Namsnit conveyed two adjoining parcels of 1.21 acres and 2.53 acres to Cloutier Construction. Cloutier later conveyed these parcels to Anne and Stanley Bishop for consideration.

[¶6] Title 30–A M.R.S.A. § 4401(4) (1996) defines a subdivision as "the division of a tract or parcel of land into [three] or more lots within any [five]-year period." Section 4 of the Falmouth Subdivision Ordinance requires any person creating a subdivision to file an application for approval with the Falmouth Planning Board. Falmouth, Me., Land Subdivision Ordinance § 4 (August 2000). Tinsman never applied for subdivision approval with the Board. He applied to the Board for private way approval in the spring of 2002 on behalf of his wife, Jennifer. The Town later requested that Tinsman's mother, Sandra, be joined in the application as well. Tinsman requested the private way to provide street access and frontage for Lots 54–6 and 54–7, owned by his mother and wife, respectively.

[¶7] After a public hearing, the Board denied Tinsman's private way application, finding that Lots 54–6 and 54–7 were "part of an unapproved subdivision and [could not] be served by a private way without proper subdivision review and approval." Tinsman appealed the Board's decision to the Superior Court pursuant to M.R. Civ. P. 80B and, on March 3, 2003, the Superior Court affirmed the Board's decision. This appeal followed.

---

1. Namsnit is "Tinsman" spelled backwards.

2. The deeds indicate September 20, 1999, as the recording date, though other sources, including the Board's findings, suggest that the

transactions took place on September 21, 1999.

3. Tinsman's parents later divorced, and Sandra Tinsman now holds title to the property.

## II.  DISCUSSION

[¶ 8] When the Superior Court acts as an appellate court pursuant to M.R. Civ. P. 80B, we review directly the decision made by the Planning Board. *Conservation Law Found. v. Lincolnville*, 2001 ME 175, ¶ 6, 786 A.2d 616, 618–19. We must determine whether the Board abused its discretion, committed errors of law or made findings that are unsupported by substantial evidence contained in the record. *Id.*

### A.  Transfers with the Intent to Avoid the Objectives of the Subdivision Statute

[¶ 9] Division of land into three or more lots within a five-year period results in the creation of a subdivision. 30–A M.R.S.A. § 4401(4). Certain land transfers, however, are excepted from the subdivision law, including gifts to relatives or transfers to abutters, and do not operate to create a subdivision. Tinsman challenges the Board's finding in this case that, in making the property transfers, he intended to avoid the objectives of the subdivision statute. Tinsman argues that the transfers he made were permissible and within the exceptions in the subdivision statute for gifts to relatives and conveyances to abutters. He contends he lacked the requisite intent and, therefore, no subdivision was created as a matter of law. The Town contends that the Board's finding that Tinsman had the "purpose or design ... to avoid the objectives of the subdivision statute" is amply supported in the record.

[¶ 10] If the intent of the transferor of the conveyances of real estate to relatives and abutters is to avoid the objectives of the subdivision statute, then the exemption does not apply and those transfers are counted in determining whether a subdivision is created. 30–A M.R.S.A. § 4401(4)(D).[4] Accordingly, the determination of whether Tinsman's intent in making the real estate transfers was to avoid the subdivision statute is crucial.

[¶ 11] The meaning of section 4401(4)(D) is a question of interpretation, and therefore, is reviewed de novo. *State v. McLaughlin*, 2002 ME 55, ¶ 5, 794 A.2d 69, 72. Both Tinsman and the Town agree that the "plain meaning" of intent should be used in interpreting the statute. *See Estate of Spear*, 1997 ME 15, ¶ 7, 689 A.2d 590, 591–92. Intent is defined as "[t]he state of mind accompanying an act, [especially] a forbidden act." BLACK'S LAW DICTIONARY 813 (7th ed. 1999). Because Tinsman sought to avoid subdivision approval, he had the burden of proving that he did not intend to avoid the subdivision laws.

[¶ 12] The determination of an individual's state of mind is a question of fact, which we review for clear error. *State v. Nile*, 557 A.2d 950, 953–54 (Me.1989). The record before the Board amply supports its factual finding that in making the transfers, Tinsman acted with the intent to avoid the subdivision statute: (1) Tinsman is in the real estate development business; (2) Tinsman admitted at a Planning Board

---

4.  The version of 30–A M.R.S.A. § 4401(4)(D), relevant to the present case, states:

A division accomplished by devise, condemnation, order of court, gift to a person related to the donor by blood, marriage or adoption ... or by the transfer of any interest in land to the owner of land abutting that land does not create a lot or lots for the purpose of this definition, unless the intent of the transferor in any transfer or gift within this paragraph is to avoid the objectives of this subchapter.

Section 4401(4)(D) was subsequently repealed, P.L. 2001, ch. 359, § 2, and replaced with §§ D–1, D–2, D–3, D–4, D–5, and D–6 for each kind of division previously mentioned in § 4401(4)(D). *See* 30–A M.R.S.A. § 4401(4) (Supp.2003).

meeting that he made at least some of the transfers with the intent to avoid the requirements of the subdivision statute; (3) George Thebarge, the Town Planner, testified at the hearing that the property contains extensive areas of poorly drained soils, and that subdivision approval would be difficult to secure; (4) Namsnit is wholly owned and controlled by Tinsman; (5) numerous transfers took place between Tinsman and Namsnit, without consideration, during a short period of time; and (6) the sequence of conveyances allowed Tinsman to sell property to Cloutier Construction without creating a subdivision. The Board did not err in its finding that Tinsman's intent was to avoid the regulatory consequences of creating a subdivision.

B. Authority to Approve a Private Way Application for Lots that are Part of an Unapproved Subdivision

[¶ 13] Tinsman contends that the Board cannot require that all private ways be part of an approved subdivision because such a requirement would prohibit private ways accessing lots that fall under the 30–A M.R.S.A. § 4401(4)(D) exemptions. Tinsman misconstrues the Board's finding. The Board found that it "may not approve a private way application if the private way will serve lots that are part of *an unapproved subdivision.*" Contrary to Tinsman's contention, the Board did not find that "all private ways must be part of *an approved subdivision.*" The Board could still approve private ways if they serve lots that are exempt under section 4401(4)(D).

■ [¶ 14] He also contends that nothing in section 5.27 of the Falmouth Zoning Ordinance suggests that the Board cannot approve a private way to a lot that is part of an unapproved subdivision.[5] The Town

contends that such explicit language is unnecessary because it is obvious that the Board should not grant approval when illegal subdivision lots are involved. In addition, the Town contends that if read together, instead of in isolation as Tinsman suggests, the land use ordinances and State statute make clear that the Board not only has the authority, but also the responsibility to reject private ways which are proposed to serve illegal subdivision lots.

[¶ 15] To support this contention, the Town points to several provisions of the Subdivision Ordinance, the Zoning Ordinance, and the State statute governing land use, 30–A M.R.S.A. §§ 4401–4407 (1996) (current version at 30–A M.R.S.A. §§ 4401–4407 (1996 & Supp.2003)). For instance, section 5.27 of the Zoning Ordinance *requires* that a private way plan be recorded in the Cumberland County Registry of Deeds, Falmouth, Me., Zoning and Site Plan Review Ordinance § 5.27; and that section 14(A) of the Subdivision Ordinance *prohibits* the recording of a plan with lots that are part of an unapproved subdivision; and that recording is necessary for the approval to be effective, Falmouth, Me., Land Subdivision Ordinance § 14(A) (August 2000). Therefore, even if the Board had approved the private way, Tinsman could not have recorded the plan without violating the Subdivision Ordinance. The Board correctly concluded that it cannot approve a private way serving lots in an unapproved subdivision.

C. The Testimony of the Falmouth Town Planner

■ [¶ 16] Tinsman also contends that the Board abused its discretion by relying

5. The Town contends that this argument was not made before the Board and, therefore, has not been preserved by Tinsman.

on the testimony of the Town Planner, George Thebarge, that Tinsman would have difficulty obtaining subdivision approval because of wetland and soil issues with the property. Tinsman contends that Thebarge's testimony was based on "mere conjecture" and not on concrete evidence. The testimony, however, contained sufficient evidence that Tinsman faced potential roadblocks in obtaining subdivision approval. Thebarge presented the Board with a map, created by the Cumberland County Soil Conservation Service, detailing the location of soil with poor drainage. He showed the Board aerial photographs depicting wetland areas. Thebarge further explained to the Board that the Town planning staff "uses the maps as red flags" when reviewing subdivision applications. Such evidence supported Thebarge's testimony that approval of the lots would be "questionable" because of the land conditions. The Board acted within its discretion in allowing Thebarge to testify and in relying on that testimony.

[¶ 17] Other contentions raised by Tinsman are without merit and do not require discussion.

The entry is:

Judgment affirmed.