2005 ME 110

**Gabriel TREMBLAY et al.**

v.

**LAND USE REGULATION COMMISSION et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: April 20, 2005.
Decided: Oct. 13, 2005.

Gabriel V. & Katherine Tremblay, Wolfeboro, NH, for plaintiffs.

G. Steven Rowe, Attorney General, Amy B. Mills, Asst. Atty. Gen., Lucinda E. White, Asst. Atty. Gen., Jeffrey R. Pidot, Asst. Atty. Gen., Augusta, Roy T. Pierce, Esq., Virginia E. Davis, Esq., Preti Flaherty Beliveau Pachios & Haley, LLC, Portland, (for John & Lise Hoffman), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, CALKINS, and LEVY, JJ.*

SAUFLEY, C.J.

[¶ 1] Gabriel and Katherine Tremblay appeal from a judgment entered in the Superior Court (Kennebec County, *Studstrup, J.*) in which the court affirmed the decision of the Land Use Regulation Commission approving a six-lot subdivision on land owned by John Hofmann. The Tremblays, whose land abuts the Hofmann land, argue, inter alia, that LURC erred in approving the subdivision without considering the alleged earlier illegal subdivision of John Hofmann's land. We affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] In May 2003, LURC granted John Hofmann's application for subdivision ap-

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

proval regarding land abutting Cupsuptic Lake in Oxford County. That approval followed almost twenty years of Hofmann's ownership and transfers of land near and abutting the lake, primarily among family members.

[¶ 3] In 1984, Hofmann purchased a roughly seventeen-acre parcel of land (Parcel A) from the Oxford Paper Company on the southern tip of Pleasant Island Peninsula abutting Cupsuptic Lake. In 1985, he applied for and received LURC's approval for an eleven-lot subdivision of that land. In February 1987, Hofmann purchased an eighty-two acre tract (Parcel B) abutting Parcel A, again from the Oxford Paper Company. The paper company also sold several lots on the peninsula to other people around this same time, including the Tremblays.

[¶ 4] In 1988 and 1989, LURC denied Hofmann's applications for a zone change and a twenty-six-lot residential subdivision of Parcel B. LURC determined that the subdivision would have violated the zoning laws in effect at the time, and that Hofmann had not adequately demonstrated a need for rezoning the parcel. Hofmann did not appeal from that denial.

[¶ 5] Hofmann made no further effort to obtain approval of the twenty-six-lot subdivision, but instead, in June 1989, he divided Parcel B into six separate lots, retaining one for himself, giving two to his wife, and giving one each to his three sons. In 1991, Hofmann conveyed a fifty-foot-wide road from Parcel B to the Pleasant Island Estates Association to be used as access to the Parcel A lots. When the road was challenged, LURC explicitly concluded that although the road cut through Parcel B, Hofmann had not illegally subdivided his land on Parcel B through that transaction.

[¶ 6] In March 1994, Hofmann purchased another eighty-four acres immedi-ately north of Parcel B (Parcel C). In 1995, LURC approved his request to build another road, this time on Parcel C. In September 1997, Hofmann deeded over thirty acres of Parcel C to his wife. Around this time, Hofmann's wife and sons began dividing their land into building lots and selling them, so that by 2000, at least fourteen separate parcels had been carved out of Parcels B and C.

[¶ 7] In 2001, LURC reclassified Hofmann's Cupsuptic Lake property from a Great Pond Protection Subdistrict and General Management Subdistrict to a Residential Recreation Development Subdistrict as part of the "Rangeley Plan." This plan made significant zoning changes in anticipation of increased residential growth in the Rangeley area. The zoning change reclassified the Hofmann property as falling within a zone where subdivisions are allowed, "reflecting its suitability [for] residential development."

[¶ 8] In 2002, Hofmann's wife received an advisory ruling from LURC regarding plans to develop her portion of Parcel C as well as the one in her name within Parcel B. This LURC ruling stated that she could legally subdivide both lots without LURC subdivision review and approval.

[¶ 9] Hofmann applied for the subdivision permit at issue here in 2002. In the application, he requested permission to subdivide approximately fifty-six acres of his property—the part of Parcel B still in his name and a portion of Parcel C that his wife deeded back to him—into a six-lot residential subdivision, with three lots in the Parcel B section and three in Parcel C. A seventh lot was to be retained by Hofmann and an eighth lot was designated to remain as open space.

[¶ 10] LURC approved Hofmann's subdivision application in May 2003. The abutters challenged the approval in part

based on their allegations of prior illegal land transactions by Hofmann. LURC's fifteen-page decision addressed the allegations as follows:

> The Commission makes note of the arguments of opponents to this project to the effect that some of the applicant's prior land transactions in this area may have occurred in violation of the intent, if not the letter, of applicable subdivision requirements. On this issue, the Commission recognizes what is an ambiguous factual and legal history. *However, what is clear is that this agency has been aware of this history for more than 10 years and has never taken a position that these prior transactions required a subdivision permit. To the contrary, this agency has taken actions in the past that implicitly acknowledge that it views these transactions as not creating a subdivision.* It is also clear that an appropriate remedy for an unapproved subdivision, if any existed with regard to the property in question, would be for the owner to seek subdivision review and approval, and that is exactly what the applicant has done here.

(Emphasis added.)

[¶ 11] The Tremblays appealed from LURC's decision to the Superior Court pursuant to 12 M.R.S.A. § 689 (2005) and M.R. Civ. P. 80C, primarily arguing that Hofmann's prior intra-family transfers created an illegal subdivision that precluded LURC from approving the further subdivision of Hofmann's land. The Tremblays also stated independent causes of action alleging public and private nuisance and seeking a declaratory judgment. The court affirmed the LURC decision and dismissed the Tremblays' three independent causes of action.[1] This appeal followed.

## II. DISCUSSION

[¶ 12] The first question before us is whether LURC erred in rejecting the Tremblays' factual assertions that the prior transfers of Hofmann's land created one or more illegal subdivisions. Only if we conclude that LURC erred in that factual finding would we address the Tremblays' second argument that the existence of a prior illegal subdivision of land prohibits, as a matter of law, the approval of a subsequent and otherwise valid subdivision application involving some of the same land. The Superior Court found no error in LURC's factual finding that the prior transfers did not create any illegal subdivisions. We agree and thus do not reach the second issue.

[¶ 13] "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review [the administrative] agency's decision directly." *S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶ 4, 868 A.2d 210, 213. We review the agency's decision for legal errors, an unsustainable exercise of discretion, or unsupported findings of fact. *Id.*

[¶ 14] The Tremblays urged LURC to preclude Hofmann from receiving approval for his current subdivision application because, the Tremblays argued, the previous Hofmann transfers were undertaken to avoid subdivision review. A subdivision is "a division of an existing parcel of land into 3 or more parcels or lots within any 5–year period, whether this division is accomplished by platting of the land for immediate or future sale, by sale of the land or by leasing." 12 M.R.S.A.

---

1. The court dismissed the declaratory judgment action because of the exclusive nature of the administrative appeal process and it dismissed the public and private nuisance claims as unripe because the Tremblays alleged no actual injury.

§ 682(2–A) (2005).[2] Although no statutory family gift exemption existed in 1989,[3] at the time of the Hofmann intra-family gifts, the LURC regulations did exempt gifts to relatives from the definition of subdivision, as long as such transfers were not for the purposes of avoiding subdivision review. *See, e.g.,* Me. Dep't of Conservation, Land Use Regulation Comm'n, Land Use Dists. & Standards 10.02(86)(B)(3) (Sept. 22, 1990); Me. Dep't of Conservation, Land Use Regulation Comm'n, Land Use Dists. & Standards 10.02(71)(b) (Nov. 19, 1988).[4]

[¶ 15] LURC was unconvinced that the prior transfers created illegal subdivisions and concluded that this earlier conduct did not preclude the current approval. We cannot substitute our own factual determination for that of the agency charged with oversight when the record is sufficient to support the agency's finding. *See Suzman v. Comm'r, Dep't of Health & Human Servs.,* 2005 ME 80, ¶ 24, 876 A.2d 29, 36. The record supports LURC's factual finding: most of the transfers were individual lots to family members; the family members held the lots for several years, often for five or more years, before any further transfers occurred; the Hofmanns sought and received LURC's guidance several times; and LURC had never identified the intra-family transfers as violating the subdivision laws.

[¶ 16] Nonetheless, relying on *Tinsman v. Town of Falmouth,* 2004 ME 2, ¶¶ 12–15, 840 A.2d 100, 103–04, the Tremblays argue that we must vacate LURC's approval. Our holding in *Tinsman* does not, however, support the Tremblays' argument. In *Tinsman,* we affirmed the Town's decision to deny Tinsman approval to create a street to serve a subdivision that the Town concluded had been created illegally. *Id.* ¶ 15, 840 A.2d at 104. In contrast to the matter before us, the entity charged with land use oversight in *Tinsman*—the Town—made a factual finding that Tinsman had acted with the intent to avoid the subdivision laws and that the requested road would therefore benefit an illegal subdivision. *Id.* ¶ 12, 840 A.2d at 103–04. Reviewing the record before the Town, we concluded that the Town did not err in its factual findings or in exercising its discretion to deny the application. *Id.* ¶¶ 12, 15, 840 A.2d at 103–04.

[¶ 17] Here, on different facts, LURC found no such intent on the part of Hofmann, and we do not disturb LURC's find-

---

2. Unless specifically exempt, all subdivision developments in unorganized territories must be approved by LURC. 12 M.R.S.A. § 685–B (2005).

3. In 2001, the Legislature enacted a statute to exempt certain divisions of land from the definition of subdivision, including a division of land accomplished by a gift to a relative. P.L.2001, ch. 431, § 3. To be exempt, the current statute requires five years of continuous ownership by the donor before dividing the land by gift and five years of continuous ownership by the recipient, without division or transfer, following the gift:

A division accomplished by the following does not create a subdivision lot or lots unless the intent of the transfer is to avoid the objectives of this chapter.

1. Gifts to relatives. A division of land accomplished by gift to a spouse, parent, grandparent, child, grandchild or sibling of the donor of the lot or parcel does not create a subdivision lot if the donor has owned the lot or parcel for a continuous period of 5 years immediately preceding the division by gift and the lot or parcel is not further divided or transferred within 5 years from the date of division.
12 M.R.S.A. § 682–B (2005).

4. The current LURC regulation incorporates the statutory requirement of continuous ownership by the donor for five years before making the gift and by the recipient for five years after receiving the gift. *See* 4 C.M.R. 04 061 010–137 § 10.17(B)(9)(a)(6)(d) (2002) (citing 12 M.R.S.A. § 682–B(1)).

ing.[5] The Tremblays' argument that Hofmann illegally subdivided other parts of his property was simply not accepted by LURC, as demonstrated in its finding that

> this agency has been aware of [Hofmann's land use] history for more than 10 years and has never taken a position that the[ ] prior transactions required a subdivision permit. To the contrary, this agency has taken actions in the past that implicitly acknowledge that it views these transactions as not creating a subdivision.

As we previously concluded, the record supports this finding.[6] Moreover, the record shows that Hofmann, contrary to the Tremblays' contention that he was avoiding the regulations, sought LURC's advice on other land divisions that occurred before the latest subdivision request. This is particularly true of Parcel C; the record does not support any assertions that divisions of Parcel C have occurred without LURC's knowledge or approval. Additionally, the fact that Hofmann's subdivision application was approved after LURC implemented zoning changes that accommodate subdivisions further supports LURC's decision.

[¶ 18] Accordingly, we conclude that LURC did not err when it approved the current subdivision application presented by Hofmann.[7]

The entry is:

Judgment affirmed.

---

**5.** Hofmann met his "burden of proving that he did not intend to avoid the subdivision laws." *See Tinsman v. Town of Falmouth,* 2004 ME 2, ¶ 11, 840 A.2d 100, 103.

**6.** Note that such conduct would comply with the current provisions of the family gift exemption. 12 M.R.S.A. § 682–B(1).

**7.** We have considered the Tremblays' other arguments on appeal and find no error.