2008 ME 134

**Vickie L. MILLS**

v.

**TOWN OF ELIOT et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 17, 2008.
Decided: Aug. 28, 2008.

William H. Dale, Esq. (orally), Jonathan T. Nass, Esq., Jensen Baird Gardner & Henry, Portland, ME, for Vickie Mills.

Durward W. Parkinson, Esq. (orally), Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk, ME, for James Cullen, William Cullen, Anthony Bullis, Brenna Bullis, Katie Bullis, Meghan Bullis, Richard Cullen, KBM Builders, Inc., and M.K. Murphy, Inc.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Vickie L. Mills appeals from a judgment entered in the Superior Court (York County, *Brennan, J.*) affirming a decision of the Town of Eliot Board of Appeals (the Board). The Board had denied Mills's administrative appeal of a code enforcement officer's (CEO) approval of a building permit for a lot in a so-called family subdivision that abuts Mills's property. Mills contends that the Superior Court erred when it affirmed the Board's decision to uphold the CEO's approval of the permit because the family subdivision was illegally created in 2001. Mills argues, in effect, that (1) the court erred in finding her appeal to the Board untimely and in assigning the burden of proof on the issue of intent to her, and (2) the Board erred in failing to determine the subdividers' intent in forming a family subdivision pursuant to 30–A M.R.S.A. § 4401(4)(D) (1996).[1] We vacate the court's judgment.[2]

## I. PROCEDURAL HISTORY

[¶ 2] On May 5, 2006, Mills filed a request for administrative appeal with the Board contesting the Town CEO's April 5, 2006, issuance of a building permit with respect to property owned by James Cullen in the alleged family subdivision. The Board held a public hearing on June 15, 2006, at which Mills, the CEO, and the subdividers and their attorney spoke. The Board issued findings of fact and conclusions in a notice of decision dated June 20, 2006. The Board denied Mills's appeal of the CEO's granting of the building permit, concluding that:

> Based upon the above stated facts and the provisions of the ordinances cited,

1. Title 30–A M.R.S.A. § 4401(4)(D) (1996) provides:

   A division accomplished by ... gift to a person related to the donor by blood, marriage or adoption ... does not create a lot or lots for the purposes of [the state law definition of "subdivision"] unless the intent of the transferor in any transfer or gift within this paragraph is to avoid the objectives of this subchapter.

   Section 4401(4)(D) was repealed and replaced by P.L. 2001, ch. 359, §§ 2, 3 (effective Sept. 21, 2001) (codified at 30–A M.R.S.A. § 4401(4)(D–1) to (D–6) (2007)).

2. We have considered Mills's other arguments on appeal and conclude that they do not merit discussion, particularly in light of our holding in this case.

the Board of Appeals concludes that the Code Enforcement Officer did not act clearly contrary to the specific provisions of Chapter 45, Zoning. Several members questioned the status of the Subdivision as a Family Subdivision; however, appeals could have been made sooner as other permits have been issued.

[¶ 3] Mills appealed the Board's administrative action to the Superior Court pursuant to M.R. Civ. P. 80B. Following a hearing at which Mills represented herself, the court entered a judgment dated May 3, 2007, affirming the Board's decision, concluding that: (1) Mills did not appeal the CEO's approval of the family subdivision within thirty days as required by town ordinance; (2) Mills did not meet the good cause exception to extend the thirty-day appeal period, in part because she had constructive notice of the family subdivision approval when it was recorded; (3) the Board credited testimony that the subdividers' intent was "to keep the land in the family and to provide a common home for the various relatives, not to evade statutory requirements," and that the Board did not abuse its discretion when it failed to find that the subdividers intended to circumvent the law; and (4) the Board did not abuse its discretion in upholding the CEO's actions. Mills filed this timely appeal.

## II. DISCUSSION

### A. Relevant Statutory Provisions

[¶ 4] Before addressing the issues in this case, we review the statutory provisions central to a discussion of those issues. As a general rule, the division of a tract or parcel of land into three or more lots within a five-year period results in the creation of a subdivision. 30–A M.R.S.A. § 4401(4) (1996).[3] Subdivisions are subject to significant statutory and local government regulation. *See* 30–A M.R.S.A. §§ 4401–4407 (2007). However, in 2001, when the alleged family subdivision in this case was created, a division of land "accomplished by . . . gift to a person related to the donor by blood, marriage or adoption . . . [did] not create a lot or lots" that counted toward determining the existence of a subdivision as defined in section 4401, unless the donor's intent in making the gift was to avoid the objectives of the subdivision subchapter. 30–A M.R.S.A. § 4401(4)(D). A transferor could divide his parcel of land into three or more lots within a five-year period without complying with the requirements applicable to subdivisions by giving the lots to family members. Unless the transferor's intent in doing so was found to be an attempt to avoid the requirements applicable to subdivisions, the subdivided parcel qualified as a "family subdivision" pursuant to section 4401(4)(D).

### B. Timeliness of Mills's Appeal to the Board

[¶ 5] The first issue we address is whether Mills's appeal of the issuance of the third building permit in 2006 was timely. On this issue, we review the Board's determination directly, examining "the record before the [B]oard to determine if it abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Boisvert v. King,* 618 A.2d 211, 213 (Me.1992).

---

**3.** Title 30–A M.R.S.A. § 4401(4) has since been amended, or affected, by P.L. 2001, ch. 359, §§ 1–8 (effective Sept. 21, 2001); P.L. 2001, ch. 523, § 1 (effective March 12, 2002); P.L. 2001, ch. 651, §§ 1–3 (effective July 25, 2002). The subsequent changes do not affect this opinion.

[¶ 6] The following facts, relevant to the timeliness of Mills's appeal, are supported by substantial evidence in the record.[4] Sometime in 2001, a plan to form a family subdivision from a forty-acre parcel that abuts Mills's property was submitted to the Town's CEO. The record before the Board shows that the parcel was owned by KBM Builders, Inc., a company owned by William Cullen and Anthony Bullis. The CEO approved the family subdivision plan on May 22, 2001, the plan was recorded on May 24, 2001, and family members thereafter owned the lots in the subdivision. The record shows that KBM had sold the parcel to Cullen and Bullis, who then divided the parcel by gifting individual lots to members of their family in May 2001. The Town has issued three building permits with respect to lots in the family subdivision since its formation. Neither of the first two permits, issued more than a year before the Board hearing, was appealed.

[¶ 7] The Board appears to have concluded that, to the extent Mills's appeal of the building permit was actually a challenge to the validity of the family subdivision, her appeal was untimely because it could have been brought earlier, given that two building permits had previously been issued in the subdivision. The subdividers further argue that Mills should have brought her appeal within thirty days of the CEO's approval of the family subdivision plan in May 2001 and that no good cause exception applies to allow her to bring an otherwise untimely appeal. *See Viles v. Town of Embden*, 2006 ME 107, ¶¶ 8, 12–13, 905 A.2d 298, 301–02 (discussing the good cause exception); *see also Brackett v. Town of Rangeley*, 2003 ME 109, ¶¶ 14, 17–25, 831 A.2d 422, 427–30. We conclude, without resorting to the ap-

plication of the good cause exception, that the Board erred as a matter of law in concluding that Mills was time-barred from challenging the validity of the family subdivision.

[¶ 8] It is undisputed that Mills appealed the CEO's decision to approve the application for the third building permit within thirty days after the decision was made, as required by town ordinance. *See* Eliot, Me., Municipal Code of Ordinances, Zoning, § 45–50(a) (June 16, 2007). Mills's appeal is therefore timely. This conclusion is unaffected by the fact that Mills's sole basis for challenging the issuance of the third building permit was her contention that it was issued with respect to a lot that is part of a family subdivision that was improperly formed in 2001, making the family subdivision, by default, an unapproved subdivision. Mills's appeal was timely filed after the first legally cognizable decision made by the Town concerning the formation of the family subdivision. That decision was the granting of the third building permit.

[¶ 9] The formation of a family subdivision pursuant to 30–A M.R.S.A. § 4401(4)(D) in May 2001 was not subject to town approval, nor was the Town required to hold a public hearing or provide notice to abutters of the purported formation. In short, the Town was not legally required to take any action with respect to the formation of a family subdivision. Thus, when the CEO approved the plan in 2001, the approval had no legal significance, and Mills was under no obligation to appeal it as a legally cognizable town action, even if she had known of it.

[¶ 10] Likewise, the Town's subsequent approvals of the first two building permits were not legally cognizable actions approv-

4. As discussed at length below, the factual underpinning for this case is complicated be- cause the Board that created the record was not authorized to hold a de novo hearing.

ing the formation of the subdivision. At that point, the Town had taken action to acknowledge the division of the original parcel into only two lots, thus not yet implicating Town action in expressly or tacitly approving or acknowledging the creation of a subdivision described in section 4401. Even if Mills knew of the issuance of the two permits, she had no reason to appeal because the Town's action did not approve or acknowledge the formation of an allegedly invalid family subdivision.

[¶ 11] Instead, the first time the Town took legally cognizable action that had the effect of administratively recognizing the existence of a family subdivision—or an unapproved subdivision—occurred when the Town's CEO issued the third building permit. At that time, the Town legally recognized the division of the original forty-acre parcel of land into three or more lots in a five-year period. The issuance of the third building permit was the Town's only legally operative act in affirming or recognizing the creation of a subdivision, family or otherwise. Because Mills appealed the Town's approval of the third building permit within thirty days of its issuance, the time permitted by town ordinance for such appeals, her appeal was timely.

## B. Finding of Intent to Create a Valid Family Subdivision

[¶ 12] We next consider Mills's argument that the Board failed to make a finding as to the subdividers' intent in forming the family subdivision because it erroneously believed that only a court could make that determination. However, before we can consider the merits of that issue, we must determine which decision, that of the Board or of the CEO, is the operative one on this substantive issue.

### 1. Identifying the Operative Decision

[¶ 13] "When the Superior Court acts as an appellate court, we review directly the operative decision of the municipality." *Yates v. Town of Southwest Harbor,* 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. We must determine which decision is the operative decision in this case because:

> If the Board of Appeals [properly] acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. If, however, the Board acted only in an appellate capacity, we review directly the decision of the [CEO], or other previous tribunal, not the Board of Appeals.

*Id.* (quotation marks omitted). Contrary to the parties' assumption, the Board's decision was not the operative decision in this case.

[¶ 14] To determine which decision is the operative decision for purposes of our review, we look to state statute and to the municipality's ordinances. *See Yates,* 2001 ME 2, ¶ 11, 763 A.2d at 1171. We have previously held that 30-A M.R.S.A. § 2691(3)(D) (2007), part of the statute authorizing municipalities to establish boards of appeal, "requires boards of appeal to conduct hearings de novo, unless the municipal ordinance explicitly directs otherwise." *Yates,* 2001 ME 2, ¶ 11, 763 A.2d at 1171–72; *Stewart v. Town of Sedgwick,* 2000 ME 157, ¶¶ 6–7, 757 A.2d 773, 775–76. We therefore examine the Town ordinance to determine whether it explicitly provides that the Board act solely in an appellate capacity in matters involving permit approval. *See Stewart,* 2000 ME 157, ¶ 8, 757 A.2d at 776.

Unless the ordinance or statute specifically calls for the Board to act as both

factfinder and appellate review tribunal, the Board will act in only one capacity, either as a tribunal of original jurisdiction, holding a hearing de novo, or as an appellate tribunal, reaching its decision on the basis of the record below.

*Id.* ¶ 10, 757 A.2d at 776–77.

[¶ 15] The Town's ordinance provides: "*Administrative Appeals.* The [Board] shall hear and decide where an aggrieved person or party alleges error in any permit, ... determination, or other action by the planning board or code enforcement officer," and that the "[Board] may modify or reverse action of the planning board or code enforcement officer ... only upon a finding that the decision is clearly contrary to specific provisions of this chapter." Eliot, Me., Municipal Code of Ordinances, Board of Appeals, § 45–49(a) (June 16, 2007). As we have determined in previous decisions involving similar ordinances, this language explicitly authorizes a board of appeals to undertake appellate review of a permitting decision made by the CEO or planning board. *See Gensheimer v. Town of Phippsburg,* 2005 ME 22, ¶ 11, 868 A.2d 161, 164–65 (concluding that the language of the town's ordinance constitutes a "specific limitation [that] negates the de novo review provision of section 2691(3)(D)"); *Yates,* 2001 ME 2, ¶¶ 12–13, 763 A.2d at 1172. The Town's ordinances provided contain no language permitting the Board to act as both fact-finder and appellate review tribunal.

[¶ 16] Accordingly, the Board is charged with reviewing a decision of the CEO in an appellate capacity only. *See Gensheimer,* 2005 ME 22, ¶ 11, 868 A.2d at 165. The operative decision in this case is the CEO's decision to grant the building permit. It is, therefore, the CEO's decision that we review.

## 2. Whether the CEO Made a Finding as to Intent

[¶ 17] At the time relevant to this case, the division of a parcel of land into three or more lots in a five-year period, accomplished by a gift to a person related to the donor by blood, marriage or adoption, was exempted from the State's definition of a subdivision, and thus from rules pertaining to subdivisions, "unless the intent of the transferor in any transfer or gift within this paragraph was to avoid the objectives of [the subdivision] subchapter." 30–A M.R.S.A. § 4401(4)(D). Thus, in May 2001, when the Cullen/Bullis parcel was divided, the subdividers created either (1) a valid family subdivision as described in section 4401(4)(D), or (2) an unapproved subdivision if their intent in gifting the lots was to avoid the objectives of the subdivision statute. A finding as to the subdividers' intent is critical in a case involving 30–A M.R.S.A. § 4401(4)(D). *See Tinsman v. Town of Falmouth,* 2004 ME 2, ¶ 10, 840 A.2d 100, 103 (stating that "the determination of whether [the subdividers'] intent in making the real estate transfers was to avoid the subdivision statute is crucial"). "If the intent of the transferor of the conveyances of real estate to relatives ... is to avoid the objectives of the subdivision statute, then the exemption does not apply and those transfers are counted in determining whether a subdivision is created." *Id.* As a result, before deciding to issue the third building permit with respect to a lot in a purported family subdivision, the CEO was required to make factual findings from which he could determine the legality of the family subdivision.

[¶ 18] We review the CEO's decision to issue the building permit at issue in this case for abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record. *Gensheimer,* 2005 ME 22, ¶ 16, 868 A.2d at 166. In this case, however, the CEO made no factual

findings.[5] His only determination was his decision to issue the building permit, and there is little record in this case other than that improperly developed by the Board.

[¶ 19] As we have stated previously:

> Meaningful judicial review of an agency decision is not possible without findings of fact sufficient to apprise the court of the decision's basis. In the absence of such findings, a reviewing court cannot effectively determine if an agency's decision is supported by the evidence, and there is a danger of judicial usurpation of administrative functions. Adequate findings also assure more careful administrative considerations, help parties plan cases for rehearing or judicial review and ... keep agencies within their jurisdiction.

*Chapel Rd. Assoc., LLC v. Town of Wells,* 2001 ME 178, ¶ 30, 787 A.2d 137, 140 (quotation marks omitted). We do not "embark on an independent and original inquiry" nor "review the matter by implying the findings and grounds for the decision from the available record." *Id.* ¶ 13, 787 A.2d at 141 (quotation marks omitted).

[¶ 20] The CEO's failure to make adequate findings in this case precludes meaningful judicial review. Accordingly, we must remand the case to the CEO to make sufficient and clear findings of fact relevant to the issuance of the building permit at issue in this case. *See id.* ¶¶ 12–13, 787 A.2d at 140–41 (holding that where a municipal officer or body tasked with fact-finding does not make the necessary findings, the facts found are not obvious, and facts cannot be inferred from stated conclusory facts, the "remedy ... is a remand to the agency for findings that permit meaningful judicial review" (quotation marks omitted)). This will include findings concerning the validity of the subdivision as a family subdivision, which will turn on a finding concerning the intent of the creators of the family subdivision in creating it.[6] Because James Cullen was the applicant for the third building permit, he bears the burden of establishing the factual elements necessary for the grant of his application. *See Gensheimer,* 2005 ME 22, ¶ 18, 868 A.2d at 166. He therefore bears the burden of proof on the issue of intent before the CEO on remand.

## C. Whether the Town Recognized "Family Subdivisions" When the Plan Was Approved

[¶ 21] Although we remand on other grounds, we also conclude that the CEO should consider another issue—whether the Town recognized the concept of "family subdivisions," as described in 30–A M.R.S.A. § 4401(4)(D), when the Town's CEO approved the subdivides' family subdivision plan in 2001.[7]

---

5. The CEO noted on the approved permit application, as a condition of its approval, that James Cullen is "not to convey property prior to May 26, 2006," which may be a reference to a rule applicable to family subdivisions, *see* 30–A M.R.S.A. § 4401(4)(D), but the CEO made no factual findings or otherwise explained the condition placed on the permit.

6. The current CEO is not precluded from making his own findings and conclusions by any findings or conclusions purportedly made by the CEO in "approving" the family subdivision plan in May 2001.

7. We usually do not address issues that the parties have not raised or briefed, such as this. *See Holland v. Sebunya,* 2000 ME 160, ¶ 9 n. 6, 759 A.2d 205, 209. However, this issue was raised at the hearing before the Board and discussed among the Board members, the subdividers' attorney, and the CEO. Furthermore, statutory interpretation is a legal question that we review de novo. *City of Bangor v. Penobscot County,* 2005 ME 35, ¶ 9, 868 A.2d 177, 180. We have addressed issues

[¶ 22] As previously discussed, the state statute in effect in 2001 exempted a so-called "family subdivision" from the definition of a "subdivision," freeing family subdivisions from the requirements imposed on subdivisions. *See* 30–A M.R.S.A. § 4401(4)(D). However, when the alleged family subdivision in this case was formed in 2001, the state statute also permitted local governments to enforce a more expansive, i.e., inclusive, definition of a subdivision in the regulation of land use activities, meaning local ordinances need not exempt "family subdivisions" from the requirements for forming subdivisions. *See* 30–A M.R.S.A. § 4401(4)(H).[8]

■ [¶ 23] The Town's definition of "subdivision" in effect in May 2001 is not included in the record, and we do not take judicial notice of ordinances. *See Summit Realty, Inc. v. Gipe*, 315 A.2d 428, 429–30 (Me.1974). However, if the Town ordinance's definition of subdivision in May 2001 did not exempt family subdivisions, but instead expanded the State's definition of a subdivision to include family subdivisions, as permitted by 30–A M.R.S.A. § 4401(4)(H), the alleged family subdivision at issue here would have had to meet the same requirements as any subdivision formed in the Town at that time.

[¶ 24] On remand, the CEO is to determine whether the definition of "subdivision" in the Town's ordinance then in effect was expansive enough to include a "family subdivision" as described in 30–A M.R.S.A. § 4401(4)(D).

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand the matter to the Board of Appeals with instructions to remand to the Town's code enforcement officer for further proceedings consistent with this opinion.

---

*sua sponte* on occasion and do so here. *See, e.g., Passalaqua v. Passalaqua*, 2006 ME 123, ¶¶ 14–15, 908 A.2d 1214, 1218–19 (addressing a procedural issue *sua sponte* where the issue was a question of law).

8. Title 30–A M.R.S.A. § 4401(4)(H) (1996) provided:

H. Nothing in this subchapter may be construed to prevent a municipality from enacting an ordinance under its home rule authority which *expands the definition of subdivision* to include the division of a structure for commercial or industrial use or *which otherwise regulates land use activities.*

(Emphasis added.) Title 30–A M.R.S.A. § 4401(4)(H) was amended by P.L. 2001, ch. 359, § 4 (effective Sept. 21, 2001, but applying retroactively to June 1, 2001 (*see* P.L. 2001, ch. 359, § 8, as repealed and replaced by P.L. 2001, ch. 523, §§ 1, 2 (effective March 12, 2002))), although P.L. 2001, ch. 359, § 6 provided that "[t]his Act does not invalidate any municipal ordinance that expands the definition of 'subdivision' if that ordinance took effect prior to the effective date of this Act." Section 4401(4)(H) was subsequently repealed and replaced by P.L. 2001, ch. 651, §§ 2, 3 (effective July 25, 2002) (codified at 30–A M.R.S.A. § 4401(4)(H–1)(2007)).