STATE OF MAINE                          SUPERIOR COURT
WALDO, SS.                              CIVIL ACTION
                                        Docket No. AP-08-1
                                        JLH-WA i - /0 c / ....


Steven Bennett et al.,
    Plaintiffs


            v.                          Order on Appeal



Beaver Ridge Wind, LLC et al.,
    Defendants



        Pursuant to TOWN OF FREEDOM BOARD OF APPEALS ORDINANCE (ZBA Ordinance)

§ XII, 30-A M.R.S. § 2691 and M.R.Civ.P. 80B, Steven Bennett, Jeff Keating and Erin

Bennett-Wade (collectively, Bennett) appeal from a decision of the Town of Freedom

Zoning Board of Appeals (ZBA) affirming a determination made by the municipal code

enforcement officer that Beaver Ridge Wind, LLC (BRW) had not forfeited a building

permit by failing to substantially commence work authorized by that permit. On this

appeal, Bennett contends that the CEO's decision was not supported by the evidence and

that the proceedings before the ZBA were affected by a conflict of interest involving one

of its members. For the reasons stated below, the court affirms the ZBA's decision.

        On June 26, 2007, the Town's CEO issued a building permit to BRW for the

construction of three wind turbines as part of a wind power facility near the Sibley Road

in Freedom. R.8  The permit also authorized construction of electrical connections to

support the turbines and road improvements. R. 12. The permit was made subject to the

approval of the municipal Planning Board. It appears that the Planning Board ratified the

issuance of the permit on July 12, 2007. The parties use this July date as the date the

permit was issued. The municipal building ordinance provides,

        All building permits shall be void unless the work thereunder is substantially
        commenced within six (6) months of the date of issuance and substantially
        completed within two (2) years of the date of issuance.


                                        1

TOWN OF FREEDOM BUILDING ORDINANCE (Building Ordinance) § VI(B)(8). *See* R. 14.

At a Planning Board meeting held on February 7, 2008, the Town's CEO expressed his determination that BRW had satisfied the temporal requirement for substantial commencement of the development project. R. 2. (It is unclear from the record why the CEO formulated such a determination and conveyed it to the Planning Board – in other words, whether he did so in the ordinary course or in response to some extrinsic circumstance.) Bennett filed an appeal from the CEO's determination that the June 2007 permit had not lapsed. R. 1, 2. The ZBA considered Bennett's appeal at a meeting held on May 1, 2008. R. 11. Three of the five ZBA members attended the meeting. Through counsel, Bennett expressed the view that the ZBA's chair pro tem, David Bridges, was biased because, Bennett asserted, Bridges was involved with "Take Back Our Town Committee," which was described as an organization that advocated in favor of wind power projects generally and BRW's development in Freedom in particular. *Id.* In response, Bridges acknowledged that he was a member of the organization but that he felt capable of acted impartially on the matter. *Id.* Another Board member stated that Bridges should not be involved in the issue. *Id.* However, there did not arise a proper motion to disqualify Bridges from participation in the appeal, and Bridges participated in the hearing. *Id.*[1] After reviewing documentary evidence and hearing from Bennett and BRW, the three present ZBA members voted unanimously to affirm the CEO's determination that the building permit issued in 2007 had not lapsed. Bennett filed a timely appeal from this decision to this court.

As an initial matter, BRW argues that the local ZBA ordinance did not confer the ZBA with authority to entertain an appeal from the CEO's determination that the building permit was still in effect. BRW contends that this determination was not an appealable event. Because the court concludes that Bennett's substantive arguments on this appeal do not entitle him to relief, the court assumes, without definitively addressing the issue,

---

[1] Although Bennett asserts on this appeal that a Board member moved to disqualify Bridges, the record does not clear indicate whether the member actually made such a motion or whether she simply expressed her concerns about a conflict but did not formally make a motion to disqualify him. In either instance, Bennett's request to disqualify Bridges did not reach the point where the ZBA took formal action on it.

that such jurisdiction existed at the administrative level. The applicable ordinance and statute at least arguably authorized the ZBA to entertain Bennett's appeal from the CEO's lower determination. *See* 30-A M.R.S. § 4103(5) ("any order" issued by a building inspector may be appealed to the municipal zoning board of appeals); 30-A M.R.S. § 2691(4) (authorizing a municipality to empower a board of appeals to hear an appeal "from any decision [or] order. . .of any officer. . ."); ZBA Ordinance § V(A)(4)(b) (granting authority to the ZBA to determine "all appeals by any person directly or indirectly affected by any decision. . .with respect to any. . .permit. . .[r]endered by the Code Enforcement Officer relating to building code enforcement. . . ."). These jurisdictional provisions provide a sufficient basis to conclude that the ZBA likely had jurisdiction to hear Bennett's appeal, even though the challenged decision was an affirmation of the effectiveness of a permit issued previously, rather than the issuance of the permit in the first place.

## A. Conflict of interest

Bennett contends that the ZBA, as constituted, did not amount to a fair and impartial body. Bennett's argument may be seen to advance two points: that the ZBA failed to properly resolve the suggestion that Bridges was affected by a conflict of interest; and second, that Bridges was in fact biased.

When Bennett's argument is seen in this dual way, he first contends that the ZBA failed to adhere to the procedure created in the ZBA Ordinance to address possible conflicts of interest affecting its members. More particularly, he argues that Bridges' alleged conflict triggered the process set out in section IV of that Ordinance, which provides, "Any question of whether a particular issue involves a 'conflict of interest' sufficient to disqualify a member from voting there on [sic], shall be decided by a majority vote of the members, except the member whose potential conflict is under consideration." Because the ZBA is constituted of five members, Bennett argues that Bridges could participate in this proceeding only if three ZBA members voted to allow him to do so. Bennett goes on to argue that because only three members were in attendance at the hearing on his appeal, and because Bridges himself could not vote on his own disqualification, the ZBA could not and did not properly decide the issue and therefore erred in proceeding to address the merits of his (Bennett's) appeal.

3

The court, however, construes, section IV as a prescription for the procedure used to address conflicts of interest in the form of a pecuniary stake in the matter before the ZBA. Section IV includes a specific definition of "conflict of interest," which is limited to the pecuniary interests of that member, the member's immediate family or the employer of any of those people. The phrase "conflict of interest" is placed in quotations in that definitional portion of section IV. The operative sentence of section IV, which sets out the procedure the ZBA must follow when a "conflict of interest" question arises, also encapsulates the phrase "conflict of interest" in quotation marks. The court can only conclude that the phrase "conflict of interest" has a specific meaning, namely, a financial interest in a matter presented to the ZBA. Here, Bennett does not argue that Bennett had a pecuniary stake in the appeal involving BRW's permit. Rather, he argues, as the record suggests, that Bridges was a member of an organization that took an advocacy position on wind power projects and BRW's project in particular. This type of question regarding Bridges' participation in the appeal therefore does not invoke the procedure set out in section IV.

However, Bridges' affiliation with "Take Back Our Town Committee" then raises the question of whether, apart from the specific disqualification procedure included in the Board Ordinance, his participation in the appellate proceedings conducted by the ZBA constitutes a basis to vacate the ZBA's eventual decision to affirm the CEO's decision. Here, the basis for any such claim of actual bias consists of the record on appeal because Bennett did not request a trial of the facts relevant to this issue. *See Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237, 240-41. The record does not establish that Bennett was deprived of a fair hearing. Bridges affirmatively stated that he could act fairly and impartially on the merits of Bennett's appeal, and the record does not reveal that Bridges acted otherwise. It bears note that each of the three participating members of the ZBA – even the two who are not the subject of Bennett's bias argument here -- voted to affirm the CEO's decision that BRW's permit had not lapsed. Therefore, Bridges' ultimate vote that was unfavorable to Bennett cannot be viewed by itself as evidence of bias. When this factor is combined with an absence of any proof in the record that Bridges acted with partiality, the court can only conclude that Bennett has failed to demonstrate that Bridges' participation in the appeal was erroneous.

4

## B. Substantial commencement of permitted construction

Bennett next contends that the ZBA erred when it affirmed the CEO's determination that the BRW's building permit had not lapsed because, in the CEO's view, BRW had substantially commenced the construction authorized by the permit within six months of its issuance. Without disagreement from the Town or BRW, Bennett correctly observes that on this appeal, the court is to examine the CEO's determination directly, rather than the ZBA's own decision, because the ZBA acted in a purely appellate capacity. *See Mills v. Town of Elliot*, 2008 ME 134, ¶ 16, 955 A.2d 258 (holding that an ordinance substantively similar to Board Ordinance § X(E) requires the ZBA to act in an appellate capacity, so that on judicial appeal the court will review the lower decision). The court therefore reviews the CEO's decision for "errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Griffin v. Town of Dedham*, 2002 ME 105, ¶ 6, 799 A.2d 1239, 1241. "Substantial evidence exists when a reasonable mind would rely on the evidence as sufficient support for a conclusion." *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186.

The CEO issued the building permit at issue in this case on June 26, 2007, but its effectiveness was contingent on Planning Board approval. The Planning Board granted its approval on July 12, 2007. Therefore, BRW, as the permittee, was required to "substantially commence[]" construction under the permit by January 12, 2008. If BRW failed to do so, the permit would lapse and lose its legal effect. The CEO determined that BRW had substantially commenced construction and consequently that the permit did not lapse. In making his determination that BRW had substantially commenced work in a timely way, the CEO relied on two letters from Andrew Price, BRW's managing member, that described the work BRW had performed as of early 2008. *See* R. 5-A, 5-B. The difference between the two letters is significant to Bennett's argument on this appeal because Price wrote both letters after the six-month substantial commencement period had expired. The first letter, dated January 29, 2008, identified the areas of work that BRW had performed without reference to the dates when that work was done. In contrast, the second letter tied specific aspects of BRW's work to particular dates, all of which preceded January 12, 2008.

The second letter, dated February 12, 2008, advised that, among other things, BRW had purchased the three turbines that were to be erected at the development site; that it had retained a general contractor and engineering firm; that the on-site survey work for the construction had been completed; and that geotechnical borings had been taken at the site and analyzed. Additionally, in the same letter BRW noted that it had held more than one hundred meetings, bid solicitations and other events to implement the project. The work performed through January 12 resulted in expenses or financial commitments of approximately $6 million, or roughly half of the total budget for the project.

The court concludes that this information constituted a sufficient basis for the CEO to conclude that as of January 12, 2008, BRW had "substantially commenced" the "work" contemplated by the permit issued in July 2007 and that the permit therefore had not lapsed. The Building Ordinance does not define the phrase, "substantially commenced." The court, however, draws guidance from the Law Court's analysis of a comparable standard, by which a local ordinance required a landowner/permittee to make "significant progress of construction" within six months of the date the permit is issued. Although the permit in that case was for the construction of a building, the Court held that other activities that are "necessarily a part of the overall building project" count toward the "progress of construction" of the building itself. *City of Ellsworth v. Doody*, 629 A.2d 1221, 1223-24 (Me. 1993). In that case, the permittee had cleared the site, built a driveway and installed a septic system within that initial six-month period. Therefore, although the permittee had not actually started to build the structure itself, the preparatory work he performed amounted to "significant progress of construction." *Id.*

Here, the CEO had information that BRW had spent or committed considerable money toward the project; that it had secured contractors; that the site was laid out by a surveyor who worked on the scene; and that it had engaged in physical work on-site by taking borings of the ground. At least as significantly, BRW had actually acquired the turbines that are to be erected. This circumstance actually puts BRW ahead of the landowner in *Doody*, whose building – the subject of the permit – did not even exist when he was found to have engaged in "significant progress" toward its construction. Here, in contrast, during the first six months after the permit was issued BRW purchased the turbines (meaning that the proposed structures were in existence) and performed work

6

both on- and off-site toward the development. The extent of BRW's efforts may also be viewed quantitatively in light of its disbursement or commitment of millions of dollars toward the project. When viewed as a whole, the evidence warranted the CEO in concluding that BRW had "substantially commenced" work authorized by the permit and that the permit therefore had not lapsed.

The entry shall be:

The decision of the Town of Freedom Zoning Board of Appeals is affirmed.

Dated: October 24, 2008

Justice, Maine Superior Court