STATE OF MAINE  SUPERIOR COURT
CUMBERLAND, ss. CIVIL ACTION
DOCKET NO: AP-08-032

MARGARET PINCHBECK, LEON
PRIDE, LINDA ROWE, CARL
RUSSELL, NORTHEASTERN
MOTEL, BECKY HAGAR, JUNE
HAWKES, and WINDHAM
CITIZENS FOR SENSIBLE
DEVELOPMENT

            Plaintiffs,

                                      **ORDER**

   v.

THE TOWN OF WINDHAM,

            Defendant

and

WINDHAM PROPERTIES, LLC

            Party-in-Interest

Plaintiffs, pursuant to M.R. Civ. P. 80B, appeal the Windham Town Council's approval of defendant-in-interest Windham Properties' application for a mineral extraction permit for a proposed quarry. Plaintiffs challenge the Town Council's interpretation of Windham, Me., Code § 140-33(D)(16), governing vibration levels from mineral extraction.

BACKGROUND

This case's fractious history goes back to January 2006, when Windham Properties, LLC, obtained a permit from the State Department of Environmental Protection (DEP) to operate a quarry in Windham, Maine. R. at 63. The proposed

1

quarry would occupy approximately 53.14 acres along Route 302 and Nash Road in a district zoned for farm use. R. at 257. Residential homes abut the proposed quarry, as does a commercial kennel. R. at 851. Various other businesses, including a motel, operate nearby. R. at 345, 851.

Section 140-33 of the Town of Windham's Land Use Ordinance requires quarry operations to be independently approved by both the Windham Planning Board and the Windham Town Council, R. at 1680. A prior application by Windham Properties to operate a quarry on the property was denied by the Town Council in January 2007. That decision was challenged and upheld. *Windham Properties LLC, v. Town of Windham, et al.*, AP-07-9 (Me. Super. Ct., Cum. Cty., May 13, 2008) (Warren, J.). While that challenge was pending, Windham Properties developed a revised plan that was approved by the Windham Planning Board on August 27, 2007. R. at 3. The Planning Board conditioned its approval on ground vibrations being limited to 2.0 inches per second peak particle velocity (ppv) at the quarry's property line. R. at 9, 893. The revised plan was submitted to the Town Council on January 22, 2008. *Id.*

The Town Council, sitting in its quasi-judicial capacity, R. at 1537–38, received evidence and deliberated on the proposed quarry during eight public hearings held between April 8, 2008, and August 12, 2008. R. at 257. At a hearing on June 24, 2008, the Council heard the testimony of Andy McKown, Windham Properties' expert on blasting-related vibration. R. at 890–92. Windham Properties retained McKown "to guide the Council in a standard to apply to the vibration limits" set in Windham, Me., Code § 140-33(D)(16). This section reads:

> No vibration shall be produced which is transmitted through the ground and is discernible without the aid of instruments at or at any point beyond any lot line.

R. at 1682.

McKown's testimony reviewed the common methods of measuring ground vibration, and cited heavily to a 1980 study done by the United States Bureau of Mines (USBM). R. at 898–900. The purpose of the study was find vibration limits that would protect residential structures, and the USBM accomplished this by measuring blast-related vibration at different homes and checking those homes for damage after each vibration event. R. at 900–01. The USBM measured both the speed of the vibration, measured in ppv, and the frequency of the vibration measured in hertz (Hz). R. at 900. From the study data the USBM established limits incorporating both measurements to protect against structural damage. R. at 900–01.

Based on the USBM's 1980 study, McKown urged the Town Council to adopt the federal limits for protecting structures when evaluating the blasting vibrations from the proposed quarry, and to measure those vibrations at the homes nearest the quarry rather than at the lot lines. R. at 901, 904. Under the initial phase of the proposed plan, McKown expected blasting to occur once or twice per week over the course of a year. R. at 919–20.

McKown also testified to what different measures of ground vibration would feel like to a human unaided by instruments. R. at 901. He stated that humans perceive vibrations of 0.02 to 0.03 ppv, and they "become distinctly perceptible at about .2 to .3 [ppv]." R. at 901–02. For illustration, vibrations of 0.1 ppv would be "equivalent to someone walking by inside a house," 0.2 to 0.4 ppv would be like a door slamming, and vibrations between 0.5 to 1.0 ppv would be comparable to "somebody jumping inside a house." R. at 902. McKown's characterizations of the different levels of ground vibration were supported by

3

D. Todd Coffin of Ransom Environmental Consultants, Inc., in a letter provided to the Town Council at that same meeting. R. at 934–35. In the letter, Coffin described ground vibrations as "noticeable" at 0.02 pps, "troublesome" at 0.2 pps, and "severe" at 0.7 pps. R. at 288, 1532.

At the June 24th hearing the Town Council also heard the testimony of David Tobin on the meaning of the word "discernible" in Windham, Me., Code § 140-33(D)(16). R. at 930. Tobin, a member of the committee that had drafted the ordinance, stated that the word was not meant to be synonymous with "detectable." R. at 930–31. In his words, "[d]iscernible is to recognize or identify as separate and distinct; in other words, can you tell the difference between that blast and a ten-wheeler hitting a pothole," rather than the difference between vibration and stillness. R. at 931.

Based largely in reliance on Tobin's and McKown's testimony, R. at 1533–34, 1540–42, 1545, 1548–49, 1554, the Town Council concluded in a 5-2 vote that Windham, Me., Code § 140-33(D)(16) "requires the measurement of vibration at the nearest inhabitable structure not owned or controlled by the owner of the quarry," that the quarry application complied with the ordinance, and "that the quarry shall, and must, meet the safe blasting vibration limits set by the [USBM]." R. at 284–85. In its deliberations, the Town Council expressly avoided defining the term "discernible." R. at 1533, 1536–37.

On September 23, 2008, the Town Council approved Windham Properties' quarry application. Abutting property owners and Windham Citizens for Sensible Development (Plaintiffs) brought this timely appeal pursuant to M.R. Civ. P. 80B, claiming that the Town Council's interpretation of Windham, Me., Code § 140-33(D)(16) as requiring ground vibration to be measured at the nearest

4

structure contradicts the plain language of the ordinance and constitutes a reversible error of law.

The Town of Windham and Windham Properties (Defendants) counter by arguing that the Town Council was not obligated to measure ground vibrations at the quarry's lot line because § 140-33(D)(16) speaks of vibrations "at or at any point beyond any lot line." Defendants claim that the use of the word "or" makes the requirement disjunctive, and allows the Town Council to measure vibrations "at any point" it chooses. Alternately, Defendants claim that the Town Council did not need to independently consider vibrations at the lot line because the Windham Planning Board had already conditioned its approval on ground vibration at the lot line not exceeding 2.0 ppv.

## DISCUSSION

When the Court reviews municipal action pursuant to Rule 80B, it examines the record before the municipal body "to determine if it abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *Mills v. Town of Eliot*, 2008 ME 134, ¶ 5, 955 A.2d 258, 261. The Court "may affirm, reverse, or modify . . . or remand the case" to the municipality "for further proceedings." M.R. Civ. P. 80B(c).

Under Windham's highly unusual mineral extraction ordinance, both the Windham Planning Board and the Windham Town Council must approve a quarry application before mineral extraction operations may begin. In this bifurcated process, the Town Council must "take evidence, make factual findings, and apply the laws and ordinances to the petition or application at issue, and . . . do so independently of the" Planning Board. *See Stewart v. Town of*

5

*Sedgwick*, 2000 ME 157, ¶ 7, 757 A.2d 773, 776 (municipal body sitting in semi-judicial capacity must conduct its review de novo, absent explicit language to the contrary in the municipal ordinance).

At issue in this case is the Town Council's application of § 140-33(D)(16) to Windham Properties' quarry application. Section 140-33(D)(16) addresses ground vibrations caused by mineral extraction activities and mandates that:

> No vibration shall be produced which is transmitted through the ground and is discernible without the aid of instruments at or at any point beyond any lot line.

Windham, Me., Code § 140-33(D)(16). After taking evidence over the course of eight public hearings, the Town Council interpreted § 140-33(D)(16) to require "the measurement of vibration at the nearest inhabitable structure not owned or controlled by the owner of the quarry." R. at 284–85. Vibrations would be acceptable under § 140-33(D)(16) as long as they met the USBM's safe blasting limits for the protection of structures.[1]

The Town Council also found that the application satisfied § 140-33(D)(16) in part because the Planning Board had established a vibration limit of 2.0 ppv at the quarry's lot line and evidence showed that blasting operations were likely to meet this standard. However, the Town Council did not itself determine whether the proposed vibrations would be discernible at the lot line, as required by the plain language of the ordinance. This failure resulted directly from the Town Council's erroneous construction of the ordinance, which itself resulted from the council members' inability to agree on a definition of "discernible."

The record shows that on September 9, 2008 the Town Council did make an attempt to determine whether the quarry proposal would comport with § 140-

---

[1] The Court notes that the USBM safeguards appear in the state performance standards for quarries, 38 M.R.S.A. § 490-Z(14)(I).

33(D)(16)'s injunction against discernible ground vibrations, but the members could not agree on objective criteria by which to judge discernibility. R. at 1534–51. A motion was made to explicitly adopt the DEP standards used by the Planning Board, but it was defeated. R. at 1542. Instead, the Town Council passed a motion determining that "the ordinance requires the measurement of vibration at the nearest inhabitable structure" and adopting the USBM limits "in place of the DEP standards." R. at 1553–56. Passage of this motion precluded further discussion of lot lines and effectively read the contentious word "discernible" out of the ordinance.

Working from its faulty construction of § 140-33(D)(16), the Town Council found that the proposed quarry would produce ground vibrations compliant with the USMB limits at structures. It also acknowledged the Planning Board's approval of ground vibrations measuring 2.0 ppv at the quarry lot line. However, the Town Council failed to independently consider whether the proposed ground vibrations from the quarry would be discernible at the quarry's lot line.[2] Because the Town Council's approval of Windham Properties' application must be independent of the Planning Board's, the Town Council's mere recognition of the Planning Board's conditions cannot cure the Town Council's own failure to perform its duty.

The Court remands this matter to the Town Council so it may determine whether ground vibrations from the proposed quarry will be discernible without the aid of instruments at the quarry's lot line, in accordance with the plain language of § 140-33(D)(16). When doing so, the Town Council should take care

---

[2] The Court does not reach the question of whether the Town Council could establish standards for ground vibrations at structures beyond a lot line *in addition* to enforcing the discernibility standard at the lot line as required by § 140-33(D)(16).

7

to "state both the reasons for its decision and the underlying facts in order to ensure effective judicial review." *Sanborn v. Eliot*, 425 A.2d 629, 630 (Me. 1981) (citing *Brown v. Town of Wells*, 402 A.2d 57, 58 (Me. 1979); *Gashgai v. Board of Registration in Medicine*, 390 A.2d 1080, 1085 (Me. 1978)). The existing record may provide adequate evidence, or the Town Council may in its quasi-judicial capacity take limited new evidence on the standards by which it will judge vibrations' discernibility at the lot line.


## The entry is:

The Town Council's decision regarding the interpretation and application of Windham, Me., Code § 140-33(D)(16) to party-in-interest Windham Properties' quarry application is VACATED, and the matter is REMANDED to the Town Council for further proceedings to determine whether the proposed quarry will produce ground vibrations that are discernible at the quarry's lot line, consistent with this opinion.

DATE: September 8, 2009

_____
Roland A. Cole
Justice, Superior Court

8

Date Filed __10-22-08__     __CUMBERLAND__     Docket No. __AP-08-32__

County

Action _____80B APPEAL_____

MARGARET PINCHBECK              THE TOWN OF WINDHAM
LEON PRIDE                          WINDHAM PROPERTIES LLC - PII
LINDA ROWE
CARL RUSSELL
NORTHEASTERN MOTEL
BECKY HAGAR
JUNE HAWKES
WINDHAM CITIZENS FOR SENSIBLE DEVELOPMENT vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| SCOTT ANDERSON, ESQ.<br>GORDON SMITH, ESQ.<br>ONE PORTLAND SQUARE<br>PO BOX 586<br>PORTLAND, ME 04112-0586 | ERICA JOHANSON ESQ. (WINDHAM PROPERTIES) |

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: AP-08-032
RAC - CUM - 3/29/2010

MARGARET PINCHBECK, LEON
PRIDE, LINDA ROWE, CARL
RUSSELL, NORTHEASTERN
MOTEL, BECKY HAGAR, JUNE
HAWKES, and WINDHAM
CITIZENS FOR SENSIBLE
DEVELOPMENT

Plaintiffs,

v.

**ORDER**

THE TOWN OF WINDHAM,

Defendant

and

WINDHAM PROPERTIES, LLC

Party-in-Interest

The Petitioners appeal from the Windham Town Council's approval of

party-in-interest Windham Properties, LLC's application for a mineral extraction

permit. They claim that the Town Council erroneously interpreted Windham's

mineral extraction ordinance, applied the ordinance in an arbitrary manner,

reached conclusions not supported by substantial evidence on the record, and

did not make the findings of fact and conclusions of law necessary to approve

the application.

## BACKGROUND

This case began in January 2006, when Windham Properties, LLC,

obtained a permit from the State Department of Environmental Protection (DEP)

1

to operate a quarry in Windham, Maine. (R. at 63.) The proposed quarry would occupy approximately 53.14 acres along Route 302 and Nash Road in a district zoned for farm use. (R. at 257.) Residential homes, a commercial kennel, and other businesses surround Windham Properties' land. (R. at 345, 851.)

Section 140-33 of the Town of Windham's Land Use Ordinance requires quarry operations to be independently approved by both the Windham Planning Board and the Windham Town Council. (R. at 1680.) A prior application by Windham Properties to operate a quarry on the property was denied by the Town Council in January 2007. That decision was challenged and upheld. *Windham Properties LLC, v. Town of Windham, et al.*, AP-07-9 (Me. Super. Ct., Cum. Cty., May 13, 2008) (Warren, J.). While that challenge was pending, Windham Properties developed a revised plan that the Windham Planning Board approved on August 27, 2007. (R. at 3.) The Planning Board conditioned its approval on ground vibrations being limited to 2.0 inches per second peak particle velocity (ppv) at the quarry's property line. (R. at 9, 893.) The revised plan was submitted to the Town Council on January 22, 2008. (*Id.*)

The Town Council, sitting in its quasi-judicial capacity, received evidence and deliberated on the proposed quarry during eight public hearings held between April 8, 2008, and August 12, 2008. (R. at 257, 1537–38.) On June 24, 2008, the Council heard the testimony of Andy McKown, Windham Properties' expert on blasting-related vibration. (R. at 890–92.) Windham Properties retained McKown "to guide the Council in a standard to apply to the vibration limits" set in Windham, Me., Code § 140-33(D)(16). This section reads:

> No vibration shall be produced which is transmitted through the
> ground and is discernible without the aid of instruments at or at
> any point beyond any lot line.

2

(R. at 1682.)

McKown's testimony reviewed the common methods of measuring ground vibration, and cited heavily to a 1980 study conducted by the United States Bureau of Mines (USBM). (R. at 898–900.) The study's purpose was to find vibration limits that would protect residential structures, and the USBM accomplished this by measuring blast-related vibration at different homes and checking those homes for damage after each vibration event. (R. at 900–01.) The USBM measured both the speed of the vibration, measured in ppv, and the frequency of the vibration measured in hertz. (R. at 900.) From the study data the USBM established limits incorporating both measurements to protect against structural damage. (R. at 900–01.)

Based on the USBM's 1980 study, McKown urged the Town Council to adopt the federal limits for protecting structures when evaluating the blasting vibrations from the proposed quarry, and to measure those vibrations at the homes nearest the quarry rather than at the lot lines. (R. at 901, 904.) Under the initial phase of the proposed plan, McKown expected blasting to occur once or twice per week over the course of a year. (R. at 919–20.)

McKown also testified to what different measures of ground vibration would feel like to a human unaided by instruments. (R. at 901.) He stated that humans perceive vibrations of 0.02 to 0.03 ppv, and they "become distinctly perceptible at about .2 to .3 [ppv]." (R. at 901–02.) For illustration, vibrations of 0.1 ppv would be "equivalent to someone walking by inside a house," 0.2 to 0.4 ppv would be like a door slamming, and vibrations between 0.5 to 1.0 ppv would be comparable to "somebody jumping inside a house." (R. at 902.) McKown's characterizations of the different levels of ground vibration were supported by

3

D. Todd Coffin of Ransom Environmental Consultants, Inc., in a letter petitioner Margaret Pinchbeck provided to the Town Council at that same meeting. (R. at 934–35.) In the letter, Coffin described ground vibrations as "noticeable" at 0.02 ppv, "troublesome" at 0.2 ppv, and "severe" at 0.7 ppv. (R. at 288, 1532.)

At the June 24th hearing the Town Council also heard the testimony of David Tobin on the meaning of the word "discernible" in Windham, Me., Code § 140-33(D)(16). (R. at 930.) Tobin, a member of the committee that had drafted the ordinance, stated that the word was not meant to be synonymous with "detectable." (R. at 930–31.) In his words, "[d]iscernible is to recognize or identify as separate and distinct; in other words, can you tell the difference between that blast and a ten-wheeler hitting a pothole . . . ." (R. at 931.)

Relying heavily on Tobin's and McKown's testimony, (R. at 1533–34, 1540–42, 1545, 1548–49, 1554,) the Town Council concluded in a 5-2 vote that Windham, Me., Code § 140-33(D)(16) "requires the measurement of vibration at the nearest inhabitable structure not owned or controlled by the owner of the quarry, . . . that the quarry shall, and must, meet the safe blasting vibration limits set by the [USBM]," and that the quarry application complied with both the ordinance and the 2.0 ppv limit set by the Planning Board. (R. at 284–85.) In its deliberations, the Town Council expressly avoided defining the term "discernible." (R. at 1533, 1536–37.)

On September 23, 2008, the Town Council approved Windham Properties' quarry application. The Petitioners subsequently appealed pursuant to M.R. Civ. P. 80B. On that appeal, this Court found that the Town Council had committed a legal error by interpreting the phrase "No vibration shall be produced which is . . . discernible without the aid of instruments at or at any point beyond any lot

4

line" to mean that the quarry could not produce ground vibrations in excess of the USBM's safe-blasting limits at the "nearest inhabitable structure not owned or controlled by the owner of the quarry." *Pinchbeck v. Town of Windham*, 2009 Me. Super. LEXIS 109, ** 9–10 (Sept. 8, 2009). This interpretation effectively deleted the "discernibility" standard from the ordinance and precluded the Council from determining whether the proposed quarry would produce discernible ground vibrations at the quarry's lot line. *Id.* The Planning Board's condition imposing a 2.0 ppv limit at the lot line could not cure the error. *Id.* at * 10.

On September 8, 2009, the case was remanded to the Town Council with the instruction that it "determine whether ground vibrations from the proposed quarry will be discernible without the aid of instruments at the quarry's lot line, in accordance with the plain language of § 140-33(D)(16)." *Id.* at ** 10–11. The Council was "to 'state both the reasons for its decision and the underlying facts in order to ensure effective judicial review.'" *Id.* at * 11 (quoting *Sanborn v. Town of Eliot*, 425 A.2d 629, 630 (Me. 1981)). In doing so the Council was given the option of hearing new evidence or making its determination based on the existing record. *Id.*

The Town Council again addressed Windham Properties' application and the vibration standard at its October 13, 2009 meeting. (Minutes at 1, 3.) The Council decided against taking new evidence, but did receive letters from the attorneys for Windham Properties and the Petitioners, respectively. (Minutes at 6–7.) It also clarified that the relevant lot line was not that of the quarry, but rather was the outer edge of a separate lot encircling the quarry. (Minutes at 6.)

5

This buffer lot and the quarry are essentially held under common ownership. (Minutes at 6).

To structure its discussion, the Council outlined a three-step process for the meeting. (Minutes at 7.) The first step was to define the word "discernible" as used in the ordinance; the second step was to determine whether vibration would or would not be discernible at the lot line; and the third step was "to either re-approve or disapprove the quarry." (Minutes at 7.)

While attempting to define the term "discernible," council members debated whether it referenced the source of vibration or the existence of vibration itself. (Minutes at 7–10.) Under the "source" interpretation, the ordinance would prohibit ground vibrations that an unaided human would both perceive and clearly recognize as coming from blasting. (Minutes at 10.) The "existence" interpretation would prohibit blasting if it creates ground vibrations that an unaided human would detect at the lot line. (Minutes at 9–10.) In other words, the Council questioned whether "discerning" a vibration means "you know it happened . . . [or] you know what caused it." (Minutes at 15.) After referencing various definitions proposed by the parties through counsel, the Town Council voted to define "discernible" as: "To detect with senses other than vision, to recognize or identify as separate and distinct." (Minutes at 12–13.)

In step two the Council intended to determine whether ground vibrations would or would not be discernible at the lot line. Examining both the quarry application and the prior testimony of the parties' blasting experts, councilors proposed levels of vibration that would be discernible under the ordinance. (Minutes at 14–25.) In evaluating these levels, different councilors variously asked whether the vibration would be detectable (Minutes at 14, 16), could be

6

identified by source (Minutes at 14–15, 20–21), or would be objectionable (Minutes at 16, 19–20, 25). Towards the end of the discussion one council member summed up the operative definition of "discernible" as "above and beyond background [vibration] to the point of being objectionable or annoying." (Minutes at 25.) Shortly thereafter the Council adopted a motion stating:

> Vibration is not discernible provided it is less than PPV 1 inch per second at the lot line based on Mr. McKown's testimony before the Windham Town Council on June 24, 2008 and page 173 of the record.

(Minutes at 25.)

During this debate some council members expressed concern that the blasting plan submitted with the quarry application did not conform to the 1.0 ppv threshold being discussed. (Minutes at 18–19, 21–23.) The application showed that the vibration at the lot line would be 2.0 ppv in accordance with the condition set by the Planning Board, and would be 1.0 ppv or less at the nearest inhabited structures. (Minutes at 18–19, 21–23; R. at 168–69, 173.) Other councilors interpreted the application to show that blast charges could possibly be reduced to meet the ordinance, and that it was not the Council's job to determine whether the plan would meet the ordinance as submitted. (Minutes at 18, 22.) In the words of one member, "it is not our responsibility. If we set the requirement that it not be discernible . . . and he violates that vibration level, he would be subject to whatever." (Minutes at 18.) Ultimately, after adopting the 1.0 ppv vibration threshold the Council approved Order 09-147:

> To approve findings of fact and conclusions of law relative to a proposed quarry on Nash Road. Adopting all prior conclusions and findings to include those adopted in the earlier approval of said Quarry and on 10-13-2009 in the Windham Town Council Meeting.

(Minutes at 25.)

7

On November 12, 2009, the Petitioners filed a request for additional review pursuant to M.R. Civ. P. 80B. On this appeal, the Petitioners argue that the Town Council's choice of the 1.0 ppv standard was arbitrary and capricious. The Petitioners also claim that the Council was required to apply the ordinance to the quarry application before re-approving the project, but failed to do so. Finally, the Petitioners contend that the Town Council erroneously assumed that vibrations were to be measured at the outer boundary of the buffer lot instead of the quarry.

The respondent Town of Windham contends that the Town Council interpreted the ordinance in a reasonable manner, and claims it was not required to apply the ordinance to the application before approving the project. Respondent Windham Properties adds that the Town Council cited substantial evidence on the record to "rationally determine" that the quarry could meet the standards of the ordinance. Windham Properties also defends the Council's assumption that the relative point to measure ground vibrations was the Petitioners' lot lines rather than the quarry lot line.

## DISCUSSION

Under Windham's mineral extraction ordinance, the Windham Planning Board and the Windham Town Council each must review and approve a quarry application before mineral extraction operations may begin. This case began when Windham Properties submitted a quarry application to the Town Council after receiving approval from the Planning Board. The Town Council was to hold a public hearing and independently determine whether the quarry operation would "be performed subject to the conditions and safeguards set forth in" the Town's Land Use Ordinance. Windham, Me., Code § 140-33(A). (R. at 1679.)

8

Windham Properties bore the burden of showing that its application met the ordinance's standards. *See Bodack v. Town of Ogunquit,* 2006 ME 127, ¶ 12, 909 A.2d 620, 624 (subdivision applicants before planning board bore the burden of showing that the proposal satisfied every requirement of the ordinance).

Section § 140-33(D)(16) of the ordinance pertains to ground vibration and states:

> No vibration shall be produced which is transmitted through the ground and is discernible without the aid of instruments at or at any point beyond any lot line.

Windham, Me., Code § 140-33(D)(16). (R. at 1682.) The Town Council never determined whether the quarry proposal conformed to this requirement. Instead, the Council departed from the ordinance's language and found that the proposed quarry would produce ground vibrations that met the USBM's safe-blasting guidelines at the closest inhabited structure not owned by the applicant. Applying this USBM standard, the Town Council approved the application.

The approval was challenged, and on appeal this Court vacated the Town Council's action because the Council had failed to determine whether the application met the standards for ground vibration established by the ordinance. The Court remanded the case to the Town Council so it could "determine whether ground vibrations from the proposed quarry will be discernible without the aid of instruments at the quarry's lot line, in accordance with the plain language of § 140-33(D)(16)." *Pinchbeck v. Town of Windham,* 2009 Me. Super. LEXIS 109, ** 10–11 (Sept. 8, 2009). On remand the Council interpreted § 140-33(D)(16) of the ordinance and re-approved the quarry application.

On this appeal, the Court is asked to review the record before the Town Council "to determine if it abused its discretion, committed an error of law, or

9

made findings not supported by substantial evidence." *Mills v. Town of Eliot*, 2008 ME 134, ¶ 5, 955 A.2d 258, 261. The Court "may affirm, reverse, or modify . . . or remand the case" to the Town Council "for further proceedings." M.R. Civ. P. 80B(c).

## 1. "Discernible" Ground Vibration

The interpretation of the Land Use Ordinance is a question of law that this Court reviews de novo. *Isis Development, LLC v. Town of Wells*, 2003 ME 149, ¶¶ 3, 3 n.4, 836 A.2d 1285, 1287, 1287 n.4. The Court "examine[s] the plain meaning of the language of the ordinance, and . . . construe[s] its terms reasonably in light of the purposes and objectives of the ordinance and its general structure." *Nergaard v. Town of Westport Island*, 2009 ME 56, ¶ 12, 973 A.2d 735, 739 (quoting *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27, 29) (quotations omitted).

The purpose of Windham's mineral extraction ordinance is "to regulate sand and gravel and other quarrying operations . . . . These regulations are intended . . . to minimize any adverse impact of such pit operations on adjacent and nearby properties." Windham, Me., Code § 140-33(A). (R. at 1679.) The town ordinance prohibits ground vibrations that are "discernible without the aid of instruments at or at any point beyond any lot line." Windham, Me., Code § 140-33(D)(16). (R. at 1682.) While the terms of the ordinance encompass all aspects of the quarry, the debate around this controversy has focused exclusively on blasting. In an attempt to resolve the question and fashion a workable definition of the word, the Town Council defined "discernible" as: "To detect with senses other than vision, to recognize or identify as separate and distinct." (Minutes at 12–13.)

10

This definition is reasonable and facially valid. It embraces the plain meaning of the word "discernible" while effectuating the ordinance's purpose. The ordinance aims to protect residents' use and enjoyment of their properties while still allowing extractive operations. The Town Council's definition balances these goals by recognizing that ground vibrations can be perceived in many ways, but only become objectionable when their impact exceeds that of other distractions inherent in daily life.

The Council determined that ground vibrations below 1.0 ppv at the lot line are indistinct from other common ambient vibrations, and are thus indiscernible within the meaning of § 140-33(D)(16). (Minutes at 25.) The Council cited the testimony of the applicant's blasting expert, Andrew McKown. (Minutes at 25.) Mr. McKown stated that vibrations in the range of 1.0 ppv would be comparable to someone jumping inside a house. (R. at 901–02.) This interpretation of the ordinance honors the plain meaning of the word "discernible" and protects the interests of town residents while not being so unduly restrictive as to prevent all extractive operation. *See Davis v. SBA Towers II, LLC*, 2009 ME 82, ¶ 20, 979 A.2d 86, 93 (ordinance cannot be read to de facto prohibit an allowed use).

After defining the ordinance, the Town Council voted to re-approve the application before it. (Minutes at 25.) During discussion, the Council determined that the quarry could meet the 1.0 ppv standard based on the applicant's blast plan. (Minutes at 22–23.) The blast plan shows that ground vibrations can be controlled by altering charge sizes and blasthole depths, and predicts maximum ground vibrations of 0.56 ppv at a distance of 500 feet. (R. at 168, 173.) Furthermore, the application affirmatively states that all "blasts will be sized to

11

meet vibration requirements at the site property lines." (R. at 9.) This evidence adequately supports the Town Council's decision to approve the application. The Council's judgment is both based on substantial evidence and a correct interpretation of the law, and this Court will not disturb it. *See Martin v. City of Lewiston*, 2008 ME 15, ¶ 11, 939 A.2d 110, 114 (citing *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863, 866).

## 2. The Relevant Lot Line

The property containing the proposed quarry is owned by Windham Properties, LLC. A separate buffer lot owned by Peter J. Busque and/or Busque Construction Co., Inc. surrounds the quarry property. Peter Busque appears to control both Busque Construction Co. and Windham Properties, effectively placing both the quarry lot and buffer lot under his ownership and control. The Town Council assumed that the outer boundary of the buffer lot was the "lot line" at which discernible ground vibrations are prohibited. (Minutes at 6.) It did so in part because Mr. Busque had recorded a noise easement in favor of Windham Properties. (Minutes at 6; R. at 437–38.)

The Petitioners claim that this was an erroneous assumption because the ordinance prohibits discernible ground vibrations at *every* lot line and provides no mechanism to waive compliance with the requirement, and because the easement only applies to noise. Respondent Windham Properties counters that this issue has not been preserved for appeal, that the Petitioners lack standing to assert this claim, and that the Town Council's interpretation was reasonable.

"An issue is considered raised and preserved for appeal 'if there is sufficient basis in the record to alert the court and any opposing party to the existence of that issue.'" *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 5, 771 A.2d

12

371, 373 (quoting *Farley v. Town of Washburn*, 1997 ME 218, ¶ 5, 704 A.2d 347, 349). The Petitioners have not cited any portion of the record to show that this particular issue was raised before the Town Council. The Petitioners did not raise the issue in their prior appeal, nor did they argue it to the Council after remand.

Casual inspection of the record reveals that Margaret Pinchbeck briefly raised the issue in her comments at the Public Hearing held on July 8, 2008. (R. at 1014.) The only other time the issue appears to have been raised was at the deliberative session the Council held on October 13, 2009 after remand. (Minutes at 6.) These two brief instances in the record were not sufficient to alert the Town Council and the respondents to the issue of whether the quarry boundary or the buffer-lot boundary were the relevant point of measurement. The Petitioners may not raise the issue at this late stage.

Even if the issue has been preserved for appeal, the Petitioners do not have standing to assert it. To have standing, the Petitioners "must (1) have appeared before the board of appeals; and (2) be able to demonstrate a particularized injury as a result of the board's action." *Wells*, 2001 ME 20, ¶ 4, 771 at 373 (quoting *Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 6, 746 A.2d 368, 371) (quotations and citation omitted). Proper application of Windham's ground-vibration ordinance should ensure that the Petitioners will not suffer any discernible vibrations on any part of their property. This will result regardless of whether the standard is applied to the boundary of the quarry or the buffer lot. Given that the Petitioners will experience *de minimis* inconvenience regardless of how the issue is decided, they lack standing to appeal the matter.

**The entry is:**

The Town Council's decision regarding the interpretation and application of Windham, Me., Code § 140-33(D)(16) to party-in-interest Windham Properties' quarry application is affirmed.

DATE: _March 29, 2010_

_____
Roland A. Cole
Justice, Superior Court

14

Date Filed __10-22-08__     __CUMBERLAND__     Docket No. __AP-08-32__

County

Action _____80B APPEAL_____

MARGARET PINCHBECK  
LEON PRIDE  
LINDA ROWE  
CARL RUSSELL  
NORTHEASTERN MOTEL  
BECKY HAGAR  
JUNE HAWKES  
WINDHAM CITIZENS FOR SENSIBLE DEVELOPMENT  vs.

THE TOWN OF WINDHAM  
WINDHAM PROPERTIES LLC - PII

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| SCOTT ANDERSON, ESQ.<br>GORDON SMITH, ESQ.<br>ONE PORTLAND SQUARE<br>PO BOX 586<br>PORTLAND, ME 04112-0586 | ERICA JOHANSON ESQ. (WINDHAM PROPERTIES)<br>NATALIE BURNS ESQ (TOWN OF WINDHAM) |

Date of  
Entry