STATE OF MAINE                                              SUPERIOR COURT
CUMBERLAND, ss.                                            CIVIL ACTION
                                                          DOCKET NO. AP-19-30


ROBERT PIAMPIANO, et al.,

                  Plaintiffs,

v.                                                         ORDER


TOWN OF CUMBERLAND,                                        REC'D CUMB CLERKS OFC
                                                          MAY 1 '20 PM2:34

                  Defendant


Before the court is an appeal by plaintiffs Robert and Brenda Piampiano from an

August 14, 2019 decision of the Town of Cumberland Board of Adjustment and Appeals

ruling that a building permit could not be issued for construction of a residence on property

owned by the Piampianos unless the existing access road was upgraded to current town

standards.

The focus of the appeal is whether the property in question qualifies as "a lot that was

in existence on August 10, 1998" within the meaning of section 315-61(H) of the Cumberland

Zoning Code and therefore would not require an upgraded access road. The Piampianos

contend that the Board incorrectly determined that their property was not a lot in existence

on August 10, 1998 and that a contrary interpretation would violate their constitutional;

rights.

After the record and the parties' initial briefs were filed, the Piampianos also filed a

motion requesting that the court take judicial notice of certain additional information.


**Plaintiffs-Pro Se**
**Defendant-Natalie Burns, Esq.**

1. Appellate Review

Factual determinations made by a local planning board or board of appeals will only be overturned if they are not adequately supported by evidence in the record. *Jordan v. City of Ellsworth*, 2003 ME 82 ¶ 8, 828 A.2d 768. On factual issues the court may not substitute its judgment for that of a local board. Just because a different conclusion could be drawn from the record does not justify overturning the board's decision if there is evidence in the record that could support the board's determination. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995).

The court reviews the decision of a municipal planning or appeals board for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53 ¶ 6, 769 A.2d 172, 175. Interpretation of the language of a local ordinance is a question of law that is reviewed *de novo*. *Isis Development LLC v. Town of Wells*, 2003 ME 149 ¶ 3, 836 A.2d 1285, 1287.

A threshold issue in this case, not raised by the parties, is whether the court has subject matter jurisdiction to hear an appeal from the decision of a municipal board affirming an advisory opinion issued by the Town Code Enforcement Officer (CEO). The CEO's decision on the Piampianos' request for an advisory opinion was appealable under sections 315-77(B)(1) and 315-77(D)(1) of the Cumberland Zoning Ordinance (R. 101, 104),[1] and the Board's decision is appealable to the Superior Court under 30-A M.R.S. § 2691(3)(G). Because

---

[1] Citations to the administrative record ("R.") will be cited by the page numbers that appear in the bottom right hand corner. Citations to the transcript of the hearing before the Board will be cited as "Tr." followed by page number.

the Board's decision affects the property interests of the Piampianos, the court concludes that it may be appealed based on the Law Court's decision in *Raposa v. Town of York,* 2019 ME 29 ¶ 11, 204 A.3d 129.[2]

Finally, while the proceedings began as an appeal by the Piampianos from an advisory opinion of the Town's Code Enforcement Officer, the Board of Adjustment and Appeals held a *de novo* hearing on that appeal pursuant to section 315-77(C)(1) (R. 104). Accordingly, the Board's decision is the operative decision for review. *York v. Town of Southwest Harbor,* 2001 ME 2 ¶ 10, 763 A.2d 1168.

The facts in this case are not in dispute, but the Piampianos contend that the Cumberland Board of Adjustment and Appeals misinterpreted the ordinance.

2. Facts of Record and Prior Proceedings

The property at issue ("the Subject Property") consists of 12.4 acres located on a private access road known as the Blanchard Road extension and identified as Cumberland Tax Lot R08-68 I. A map showing the property is contained in the record at R. 10.[3]

The history of the property is set forth in the record and in the testimony of Robert Piampiano at the hearing before the Board. Three lots were originally created from a larger parcel on February 20, 1998. Tr. 18. One is now the Yovino property located on the southeast

---

[2] *Raposa* involved the decision of a CEO that a landowner's use of his property did not violate the zoning code, and the Law Court relied on a legislative amendment to 30-A M.R.S. § 2691(4) – not directly applicable in this case – in reaching its decision. However, the logic of *Raposa* would appear to extend to this appeal as well.

[3] The map incorrectly lists the tax lot number as R03-68 I, but the parties have agreed that the correct tax lot designation is R08-68 I. *See* Appellant's brief dated November 14, 2019 ("Appellants' Br.") at 1 n.2.

3

border of the Subject Property. Tr. 18-19. One is a lot owned solely by plaintiff Brenda Piampiano located on the northwest border of the Subject Property. Tr. 19. The remaining lot created in February 1998 was owned by plaintiff Robert Piampiano and consisted of a 17.4 acre parcel that included the 12.4 acres that now constitute the Subject Property. *Id.* On July 3, 2003 Robert Piampiano conveyed the 17.4 acre property to himself and his wife Brenda as joint tenants by a deed recorded on July 9, 2003. R. 43-46. Later in 2003 the Piampianos constructed an unpaved access road starting at the end of the paved portion of the Blanchard Road extension.

In May 2012 the Piampianos conveyed approximately five acres of the 17.4 acre property (hereafter "the Briggs Lot") to Richard Briggs and Mary Lowery and retained the remaining 12.4 acres (the Subject Property). R. 78 ¶ 3[4]; Tr. 21, 40. The Briggs Lot included a house that had been built on that portion of the property. R. 21.

All of the above lots and the unpaved access road that the Piampianos constructed in 2003 are shown on the map included in the administrative record at R. 10.

In March 2017 a prospective purchaser of the Subject Property, Michael Rosa, wrote to the Town's Code Enforcement Officer to inquire if he would be able to build on the property if he purchased it. R. 18. The CEO responded by email that, because the land purchased by the Piampianos in 1998 had been divided when they sold the Briggs Lot in 2012, the private road on which the Subject Property was located would have to be upgraded to meet the standards in section 315-61 of the Town Ordinance before a building permit could be issued. *Id.*

---

[4] At the hearing before the Board Robert Piampiano stated that he agreed with ¶¶ 1-3, 5-7, and 11-12 of the CEO's decision (R. 78-79) and that he did not disagree with ¶ 9. Tr. 40-41.

4

In January of 2019 the Piampianos wrote to the CEO, providing additional information and argument and asking him to reconsider whether road improvements would be required before a building permit could be issued for the Subject Property. R. 3-9. The CEO responded on June 19, 2019, reiterating his earlier opinion and setting forth his basis for that opinion. R. 78-79.

Pursuant to section 315-77(D)(1) of the Cumberland Zoning Ordinance, the Piampianos appealed the CEO's decision to the Board of Adjustment and Appeals, which held a hearing pursuant to §§ 315-77(B)(1) and 315-77(C)(1) on August 8, 2019.

At the conclusion of the hearing the Board members voted unanimously that they agreed with the opinion of the CEO that the Piampianos' 12.4 acre property in its present form was not in existence on August 10, 1998. Tr. 69-70. A written decision was issued on August 14, 2019 with findings and conclusions that the Piampianos' lot "as it exists today" was not in existence prior to August 10, 1998, that the sale of a portion of the lot in 2012 created two new lots, and that the current road standards are applicable. R. 11-12.

3. Current Provisions of the Cumberland Ordinance

The parties agree that the Subject Property constitutes a "backlot" within the meaning of Ordinance § 315-40. Appellants' Br. 1, 12; Town Brief dated December 16, 2019 ("Town Br.") 1-2. Section 315-40 provides:

> Single-family dwellings . . . shall be permitted on backlots, provided that they are served by a private street meeting the standards of § 315-61 of this chapter, subject to the following provisions. . . . Where a lot is in existence and is provided access by a private right-of-way recorded in the Cumberland County Registry of Deeds prior to the adoption of this chapter, these provisions do not apply . . . .

5

R. 30.

The standards for private streets in § 315-61 are contained in the record at R. 31-32. These include a minimum width of 18 feet. Section 315-61 includes a notation that it was amended on August 10, 1998, on March 24, 2003, on September 10, 2012, and finally on May 9, 2016. R. 31.

Central to this appeal is Subsection H of § 315-61, which states

> This amendment applies to all private streets proposed to be created after the effective date of this amendment and to existing private streets upon which one or more dwelling units are proposed to be constructed after the effective date of this amendment, unless such dwelling is to be constructed on a lot that was in existence on August 10, 1998.

R. 32.

There are several other provisions of the zoning ordinance and several prior provisions that the parties suggest are also relevant, and those will be discussed below.

4. Interpretation of Section 315-61

In interpreting a zoning ordinance, the court first evaluates the plain meaning of the ordinance. If the meaning is clear, there is no need to look beyond the words of the ordinance. An ordinance should be construed reasonably, considering its purpose and structure and avoiding absurd or illogical results. *Olsen v. Town of Yarmouth*, 2018 ME 27 ¶ 11, 179 A.3d 920.

The Board's conclusion was that because of the sale of a portion of the original 17.4 acre property to Briggs and Lowery in 2012, the remaining property owned by the Piampianos, as it is currently configured, was not a lot that was in existence on August 10, 1998. This follows from the plain language of §315-61(H).

6

This conclusion also is consistent with the Law Court's decision in *Viles v. Town of Embden,* 2006 ME 107, 905 A.2d 298. *Viles* turned on whether a specific lot (Lot 7) had been a "lot of record" in 1972, when the Embden Zoning Ordinance had been enacted. The Court ruled that "[i]n 1972 Lot 7 did not exist as a separate lot. It was only part of a larger tract of land." 2006 ME 107 ¶ 25.

The Piampianos, however, argue that this is an unreasonable interpretation because the 17.4 acre lot existed on August 10, 1998 and the portion of that lot that they retained remains largely unchanged. They argue that, under the Board's interpretation, if a small parcel were severed from a longstanding family farm after August 10, 1998, the farm property would be found not to have previously existed. The first answer is that, under the Piampianos' hypothetical, the family farm property would still exist; it is only the *lot* which, if reconfigured, would not exist in its current form.

The second and more definitive answer is that every new lot is created from an existing lot. If any lot created from an existing lot were deemed to constitute the continuation of the existing lot, no reconfigured lot would ever be required to meet the upgraded road standards – essentially negating § 315-61.[5]

It is also logical, as new lots are created, that the Town would seek to impose its updated private street standards. In this case the Piampianos sold the portion of their 17.4

---

[5] The Piampianos argue that their position is supported by the Law Court's decisions in *Bakala v. Town of Stonington,* 547 A.2d 85 (Me. 1994) and *Pitcher v. Town of Wayne,* 599 A.2d 1155 (Me. 1991). The court disagrees. *Bakala* supports the Board's interpretation in stating that when land is divided, it creates two lots. 542 A.2d at 87. It follows that neither of those two lots can be found to have previously existed. In *Pitcher,* the Law Court stated that "[c]ommon and general usage supports the determination that a lot is new when it comes into existence by conveyance or subdivision after the effective date of a zoning ordinance." 599 A.2d at 1157.

acre property on which a residence had been built to Briggs and Lowery. They are now seeking to be able to construct another residence on the remaining property. With additional residences, adherence to the private street standards becomes more important.

## 5. Alleged Grandfather Status and Motion for Judicial Notice

Assuming that § 315-61 would otherwise apply, the Piampianos argue that their property is nevertheless grandfathered pursuant to two other provisions of the Cumberland ordinance. The first is section 315-31, which provides in pertinent part that "notwithstanding limitations imposed by other provisions of this chapter, a single lot of record *at the effective date of adoption of this chapter* may be built upon subject to the following conditions." (R. 28) (emphasis added). The essential condition is that the lot must be in separate and distinct ownership from the adjacent lots, and the 12.4 acre Piampiano lot meets that condition. Similarly, section 315-40(A) provides that the requirement that a backlot must be served by a private street meeting the requirements of § 315-61 does not apply "[w]here a lot is in existence and is provided access by a private right-of-way recorded at the Cumberland County Registry of Deeds *prior to the adoption of this chapter.*" (R. 30) (emphasis added).

Both of those provisions turn on the date that the chapter was adopted, which is disputed by the parties and, as far as the court can tell, is not set forth in the record.[6]

---

[6] As noted above, the copy of § 315-61 that is contained in the record bears the notation "amended 8-10- 1998; 3-24-2003; 9-10-2012; 5-9-2016." (R. 31). This indicates that § 315-61 had been adopted in some form at least by August 10, 1998 but does not finally resolve when the chapter containing that section was adopted.

8

This dispute resulted in the Piampianos' motion, filed after appellants' initial brief and the Town's brief, for the court to take judicial notice. In that motion the Piampianos contend that the court should take judicial notice that the operative date of the adoption of the chapter was September 10, 2012. This is based on an affidavit of Robert Piampiano that he was informed by the clerk of the Board of Adjustment and Appeals that the Code was adopted on September 10, 2012. Appended to his affidavit are uncertified copies of a Town Council agenda and minutes reflecting adoption on that date. Also attached is a memorandum from the Town Clerk stating that this was done pursuant to a provision in the Town Charter requiring that a general codification of town ordinances be prepared every 10 years.

The Town opposes plaintiffs' motion and argues that plaintiffs neglected to attach provisions in the September 2012 codification that undercut their argument. Specifically, the Town cites a provision from the 2012 codification stating that the provisions of the Code are intended as a continuation of prior ordinances, "not as new enactments, and the date of the effectiveness of such provisions shall date from the adoption of the prior ordinances." [7]

Whether or not the provision cited by the Town would resolve the issue, the court cannot take judicial notice of municipal ordinances. *Mills v. Town of Eliot,* 2008 ME 134 ¶ 23, 955 A.2d 258. It follows that the court cannot consider either the information contained in plaintiffs' motion or in the Town's response to that motion. The Piampianos argue that the court is required to take judicial notice pursuant to 16 M.R.S. § 402, which relates to judicial notice of the common law and statutes of "every state, territory, and other jurisdiction of the

---

[7] *See* Town's Opposition to Plaintiffs' Motion Requesting Judicial Notice, dated January 28, 2020, at 4, citing and appending Code § 1-2.

United States." However, town ordinances are not statutes, and the Town of Cumberland is a jurisdiction of the State of Maine, not of the United States. The court is bound by the Law Court's decision in *Mills,* and plaintiffs' motion for judicial notice is denied.[8]

That leaves hanging the issue of determining the correct interpretation of "the effective date of adoption of this chapter" in § 315-31 and "the adoption of this chapter" in § 315-40(A). The Town argues that the Piampianos did not raise the issue of when the chapter was adopted in the proceedings before the Board. However, while the Piampianos do not appear to have made any argument below based on § 315-40(A), they did raise an argument that their property was grandfathered based on § 315-31. (R. 8). In addition, the effective date of adoption was raised and disputed in both parties' briefs.[9]

Accordingly, on this issue the court will allow the parties to supplement the record with certified copies of all provisions of any Cumberland enactments or ordinances that either party contends are pertinent to the effective date of what is now chapter 315 of the Cumberland Code and certified copies of any official Town documents that either party contends are pertinent to the effective date of what is now chapter 315 of the Cumberland Code.[10]

---

[8] Plaintiffs' motion is deficient in other respects in that it relies on hearsay statements by the Board Clerk and uncertified copies of Town Council documents. *See* 30-A M.R.S. § 3006 (requiring certification by Town Clerk).

[9] The Piampianos originally argued that that the adoption date was the date of the 2016 amendment to § 315-61. Appellants' Br. 12-13. The Town responded that the code had been adopted before the Piampianos' 12.4 acre property came into existence. Town Br. 6-8.

[10] The court does not agree with plaintiffs' suggestion that they should be allowed to take discovery or file a belated motion for a trial pursuant to M.R.Civ.P. 80B(d). Plaintiffs waived any right to seek a trial when they did not file a motion for a trial within 30 days after filing their complaint. In addition, with the appropriate record the effective date of adoption can be resolved as a matter of law.

The supplemental record shall be filed on or before June 18, 2020, and 10 days after the supplemental record is filed, the parties may file memoranda of no more than 5 double-spaced pages addressing the effective date issue. The above deadlines incorporate the existing extension of deadlines ordered because of the pandemic emergency.

The court is aware that that under Rule 80B(e)(1) it is the responsibility of plaintiffs to prepare the record and that where the record is inadequate to support an appeal, the ordinary rule is that the appeal must fail. Where an issue of law is involved, however, the court does not think that the above principle applies. In *Mills v. Town of Eliot*, the Law Court remanded a matter to determine, among other things, how the term "subdivision" had been defined in a town ordinance in effect in 2001 – an issue not included in the record but that was an issue of law subject to *de novo* review. 2008 ME 134 ¶ 23; *id.* ¶ 21 n.7. On that basis the court concludes that supplementation of the record is appropriate here.

Supplementation of the record is not required, however, to address the other arguments raised by the Piampianos.

6. Retroactivity

The Piampianos assert that the private road they constructed in 2003 met the Town standards for private streets at the time that they conveyed a portion of their 17.4 acre lot to Briggs and Lowery in 2012 and that section 315-61(H) should not be interpreted to apply retroactively. Section 315-61 was enacted in 2016 and requires an 18 foot minimum width. § 315-61(D)(1) (R. 31). That was a change from former section 421(4), which required a 16 foot minimum width. (R. 24).

11

Whether the 2003 road would meet the private street standards contained in former section 421 has not been conceded by the Town. The Town points out that under former section 421, whether a private street met the necessary standards was to be "determined by the Code Enforcement Officer" (R.23) and the Piampianos had never sought Town approval of the 2003 road. (Tr. 50). This issue does not affect the outcome of this appeal, however, because it is undisputed that that Piampianos' 2003 road does not meet the 18 foot width requirement in § 315-61.[11]

In support of their retroactivity argument, the Piampianos contend that the retroactive effect of § 315-61 is not stated in "strong, clear, and imperative language," citing *Terry v. St. Regis Paper Co.*, 459 A.2d 1106, 1109 (Me. 1983). However, § 315-61(H) clearly states that it applies to "existing private streets upon which one or more new dwellings are proposed to be constructed after the effective date of this amendment, unless such dwelling is to be constructed on a lot that was in existence on August 10, 1998." This language has the requisite clarity. *See Coates v. Employment Security Commission*, 406 A.2d 94, 97 (Me. 1979) (enactments are considered to have prospective application unless legislative intent to the contrary "is clearly expressed").

In addition, the Piampianos did not have any application or proceeding pending as of the May 2016 amendment to § 316-61 so they cannot take advantage of 1 M.R.S. § 302.

---

[11] If the Piampianos were to prevail on their claim that § 315-61 does not apply, they would then have the opportunity to demonstrate that the road constructed in 2003 meets the standards in former section 421.

7. Change in Nature or Status

The Piampianos argue that after they sold a portion of their lot to Briggs and Lowery, the nature of the remaining 12.4 acres remained unchanged. They cite cases holding that grandfathered uses do not lose their status unless there has been an extension, expansion, or enlargement of a nonconforming use. Appellants' Br. 14-16, relying particularly on *Keith v. Saco River Corridor Commission*, 464 A.2d 150, 154-55 (Me. 1983).

The problem with this argument is that it is premised on the assumption that the 12.4 acre property is currently grandfathered. The issue in this case, however, is not whether the 12.4 lot has somehow lost its grandfathered status. Instead the issue is whether the property is grandfathered in the first place, specifically (1) whether under § 315-61(H) the 12.4 acre lot is grandfathered because it was in existence on August 10, 1998 and (2) whether under §§ 315-31 and 315-40(A) the 12.4 acre lot is grandfathered because it was in existence on the effective date of the adoption of the Town of Cumberland's zoning chapter. The first of these issues has been addressed in section 4 above. The second requires supplementation of the record as discussed in section 5.

To the extent that the Piampianos are arguing that the zoning regulations in effect when they sold the Briggs lot are grandfathered, this is not the law. *See, e.g., City of Portland v. Fisherman's Wharf Associates II*, 541 A.2d 160, 164 (Me. 1988). The *Keith* decision holds that a change in the ownership of a nonconforming property does not deprive the property of grandfathered status. 464 A.2d at 154-55. *Keith* has no relevance to the question of whether, if a lot was not in existence on August 10, 1998 and was not grandfathered, its access road would need to be upgraded if a new residence were to be constructed.

13

## 8. Alleged Unfairness and Arbitrariness

The Piampianos raise various contentions that § 315-61 – if applied to their 12.4 acre lot – will have arbitrary and unfair results. They argue that of the three lots on the same spur of the existing private road, only the 12.4 acre lot will require the private road to be upgraded before a building permit will issue. The Yovino and Brenda Piampiano lots, created in February 1998, will not require any upgrading of the road because they will remain grandfathered. This, however, follows from the fact that the Yovino and Brenda Piampiano lots, in their current form, remain grandfathered because they were in existence on August 10, 1998. The 12.4 acre parcel was not. It is not the law that all of the parcels on a private road must remain grandfathered so long as some of the parcels retain that status.

They have also offered evidence that the 12.4 acre lot has been assessed as a buildable lot and that they have been paying taxes on that basis. There are three answers to that argument. The first is that the lot remains a buildable lot although, if § 351-61 applies, anyone seeking to build will have to invest in upgrading the road. The second is that the tax status of property is not relevant to zoning issues. *See F. S. Plummer v. Town of Cape Elizabeth*, 612 A.2d 856, 861 (Me. 1992) (remedy if improperly assessed is to seek abatement). The third is that the Piampianos expressly state that they are not raising an equitable estoppel claim. *See* Appellants' Br. 6-7 n.6.

## 9. Constitutional Issues

The Piampianos finally claim that the application of § 315-61 to their 12.4 acre lot would violate substantive due process and equal protection and would constitute a taking without just compensation.

14

Their argument that they have been deprived of property in violation of due process fails because it depends on the assertion that they have vested right to develop the 12.4 acre lot without upgrading the road. As discussed above, property owners are not entitled to rely on the concept that they have a vested right to the continuation of existing zoning regulations. *See, e.g., City of Portland v. Fisherman's Wharf Associates II,* 541 A.2d 160, 164 (Me. 1988). Rights only vest once a property owner has applied for or obtained a permit. *Kittery Retail Ventures LLC v. Town of Kittery,* 2004 ME 65 ¶ 32, 856 A.2d 1183; *Sahl v. Town of York,* 2000 ME 180 ¶ 13, 760 A.2d 266. Because the Piampianos had not applied for or obtained a building permit when § 315-61 was amended in 2016, they had no protectible property interest, which is fatal to their due process claim. *Kittery Retail Ventures LLC v. Town of Kittery,* 2004 ME 65 ¶ 32.

The equal protection claim is equally unavailing. At the outset, the Piampianos are not raising a claim involving fundamental rights or suspect classifications within the meaning of the equal protection clause. They must therefore show (1) that similarly situated persons are not treated equally under the ordinance and (2) that the ordinance is not rationally related to a legitimate state interest. *Doe v. Williams,* 2013 ME 34 ¶ 56, 61 A.3d 718.

Here the Piampianos fall at the first hurdle. They contend that similarly situated lots are not being treated equally because the 12.4 acre lot, the Brenda Piampiano lot, and the Yovino lot were all created in 1998 and only the 12.4 acre lot needs the access road to be upgraded before a building permit will issue. The problem with this argument is that it ignores the Piampianos' 2012 sale of a portion of their original 17.4 acre lot, including the residence constructed on that portion of the property, to Briggs and Lowery. Because of the severance of the Briggs lot, the 12.4 acre lot was not in existence on August 10, 1998 and is

15

not similarly situated to the two neighboring lots for purposes of § 315-61. Moreover, § 315-61 is rationally related to a legitimate governmental interest because, as properties are divided and developed, there is a greater need to apply road standards.

Finally, the Piampianos' taking claim fails because regulatory takings only may be found when the governmental restrictions are "so substantial as to strip the property of all practical value." *Seven Islands Land Co. v. Maine Land Use Regulation Commission*, 450 A.2d 475, 482 (Me. 1982). In this case the Piampianos offered evidence that it would be expensive for them to upgrade the road to meet the standards in § 315-61. However, they have not demonstrated that the cost would be so expensive that they could not recoup that cost plus additional value on a sale of the land once the road had been improved. Nor have they demonstrated that, if the road is not upgraded, the property does not retain some value. *See MC Associates v. Town of Cape Elizabeth*, 2001 ME 89 ¶ 16, 773 A.2d 439; *Wyer v. Board of Environmental Protection*, 2000 ME 45 ¶ 1, 747 A.2d 192. Indeed, they offered evidence that the property in its current state retains value as a woodlot, with a $ 14,400 estimate of the value of the timber, not including the value of the land. (R. 49).

In a footnote, the Piampianos argue that the court should hold a trial on the taking issue. Appellants' Br. 24 n.20. However, the Piampianos did not include an independent taking claim in their complaint pursuant to Rule 80(i) and they did not move for a trial on any factual issues within 30 days of filing their complaint pursuant to Rule 80(d).

The entry shall be:

1. With the exception of one issue on which a supplemental record is required, the court concludes that the arguments made by plaintiffs Robert and Brenda Piampiano to overturn the August 14, 2019 decision of the Cumberland Board of Adjustment and Appeals are unavailing.

16

2. Plaintiff's motion for the court to take judicial notice is denied.

3. On or before June 18, 2020 the parties shall supplement the record with certified copies of all provisions of any Cumberland enactments or ordinances that either party contends are pertinent to the effective date of what is now chapter 315 of the Cumberland Code and certified copies of any official Town documents that either party contends are pertinent to the effective date of what is now chapter 315 of the Cumberland Code.

4. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: April 29 , 2020

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 05/04/20.

17